UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
)
In re: PARK WEST GALLERIES, INC., ) MDL No. 09-2076RSL
MARKETING AND SALES PRACTICES )
LITIGATION )
_____)
)
THIS DOCUMENT RELATES TO: ) ORDER GRANTING IN PART
) MOTIONS FOR DISPOSITIVE
Blackman v. Park West Galleries, Inc., ) RELIEF
Case No. C08-1310RSL, and )
)
Bouverat v. Park West Gallery, Inc., )
Case No. C09-1177RSL. )
_____)

This matter comes before the Court on "Defendants Holland America Line Inc. and Holland America Line-USA Inc.'s Motion to Dismiss Counts I, IV, V, VI and VII of Plaintiffs' First Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6)" (C08-1310RSL, Dkt. # 53) and "Defendant Park West's Motion for Summary Judgment" (C09-1177RSL, Dkt. # 56). The Holland America defendants argue that (1) plaintiffs' Racketeer Influenced and Corrupt Organization Act claim is inadequately pled; (2) plaintiffs' unjust enrichment claim is barred by a lack of contractual privity and the incidental beneficiary rule; (3) admiralty law preempts plaintiffs' consumer protection claims and/or that those claims are inadequately pled; and (4) plaintiffs' claim for declaratory and injunctive relief is duplicative and should be dismissed. Park West seeks summary dismissal of plaintiff Bouverat's Florida consumer protection claim on the grounds that admiralty law preempts the cause of action or, in

the alternative, that Florida's law cannot reach transactions occurring on international waters.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and heard the argument of counsel, the Court finds as follows:

**A. RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT, 18 U.S.C. § 1962(C)**

A claim under § 1962(c) of the Racketeer Influenced and Corrupt Organization Act ("RICO") requires allegations that defendants conducted an enterprise through a pattern of racketeering activity. See, e.g., Miller v. Yokohama Tire Corp., 358 F.3d 616, 620 (9th Cir. 2004). Standing to sue for damages under RICO is granted to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter . . . ." 18 U.S.C. § 1964(c). Holland America contends that plaintiffs' injuries (*i.e.*, the loss of funds associated with the purchase of artwork at an inflated price) were not causally connected to the racketeering activity alleged.

Plaintiffs allege that defendants used mail and wire facilities to communicate among themselves regarding a scheme to defraud art purchasers, to advertise Park West's auctions and artwork to individuals throughout the country, to mail phony artwork and certificates of authenticity to purchasers, and to transfer the proceeds of the sales to the participants. Defendants argue that, because plaintiffs have not alleged that they received advertising in the mail or were injured thereby, their losses were not caused by a violation of RICO. Holland America has not considered whether defendants' alleged use of the mails and wires to organize defendants' alleged enterprise, to distribute artwork, and/or to transfer the ill-gotten gains caused plaintiffs injury. The Court declines *sua sponte* to evaluate whether these activities constitute "racketeering activity" or whether factual and proximate causation exist.

Holland America also argues that plaintiffs have failed to allege "racketeering activity" with the specificity required by Fed. R. Civ. P. 9(b). The Court agrees. "Racketeering activity" includes any act indictable under the federal mail and wire fraud statutes, 18 U.S.C.

ORDER GRANTING IN PART MOTIONS
FOR DISPOSITIVE RELIEF                -2-

§§ 1341 and 1343. To allege a violation of these statutes, it is necessary to show (1) that defendants formed a scheme to defraud, (2) that they used the United States mails or wires in furtherance of the scheme, and (3) the defendants did so with specific intent to deceive or defraud. Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1399-1400 (9th Cir. 1986). Rule 9(b) requires plaintiffs to detail with particularity the time, place, and manner of each act of mail or wire fraud and to identify the role of each defendant in the fraudulent scheme. Lancaster Community Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991). According to plaintiffs, Holland America violated the mail and wire fraud statutes when it communicated with the other defendants and its various offices about the scheme to defraud art purchasers, sent marketing materials to cruise passengers, and received the wrongful proceeds of the scheme. No specifics regarding these communications are provided: plaintiffs simply allege that "[d]efendants have committed wire fraud thousands or tens of thousands of times since at least 1993 . . . ." First Amended Class Action Complaint at ¶ 87. Plaintiffs' claim of fraud is based on nothing more than unsupported accusations of an agreement and communications in furtherance thereof. Such conclusory allegations are insufficient, even under Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439-40 (9th Cir. 1987) (complaint identifying alleged misstatements by content, date, and the document in which they appeared satisfied Rule 9). Plaintiffs' RICO claim against Holland America, as currently alleged, must be dismissed. If plaintiffs choose to reassert this claim in an amended pleading, detailed allegations regarding the agreement between defendants and their use of the mails or wires in furtherance of that agreement are required.

**B. UNJUST ENRICHMENT**

Plaintiffs allege facts supporting all of the elements of an unjust enrichment claim under Washington law: (1) a benefit conferred, (2) knowledge of the benefit, and (3) circumstances that would make it unjust for Holland America to retain the benefit. Young v.

Young, 164 Wn.2d 477, 484 (2008). Defendants incorrectly argue that the lack of contractual privity between Holland America and plaintiffs bars this claim: to the contrary, the existence of an express contract would preclude an action on an implied contract relating to the same matter. Chandler v. Wash. Toll Bridge Auth., 17 Wn.2d 591, 604 (1943). Nor may Holland America claim the status of incidental beneficiary from whom no restitution can be sought. In Farwest Steel Corp. v. Mainline Metal Works, Inc., 48 Wn. App. 719, 732 (1987), the court described the general rule as follows:

> The mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi contract, unjust enrichment, or restitution. Moreover, where a third person benefits from a contract entered into between two other persons, in the absence of some misleading act by the third person, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person. In other words, a person who has conferred a benefit upon another, by the performance of a contract with a third person, is not entitled to restitution from the other merely because of the failure of performance by the third person.

(quoting 66 Am. Jur.2d Restitution and Implied Contracts, § 16 at 960). Plaintiffs allege that Holland America took part in a scheme to defraud its passengers and that it disseminated misleading information regarding Park West's business and artwork. In such circumstances, defendants are not merely innocent beneficiaries of a contract breached by Park West. Plaintiffs' claim of unjust enrichment may proceed.

**C. ADMIRALTY JURISDICTION AND STATE CONSUMER PROTECTION LAWS**

Although plaintiffs argue that it is premature for this Court to decide whether admiralty law applies, they do not explain why this issue cannot be resolved at this point in the litigation, especially when the pending dispositive motions turn in part on the nature of this Court's jurisdiction. Plaintiffs argue that the law of admiralty does not apply to their claims against Park West because the conduct of which Park West is accused occurred on both land and sea. Plaintiffs acknowledge, however, that Holland America was not involved in Park West's

land-based sales.

The Court finds that plaintiffs' claims against both Park West and Holland America satisfy the location and connection tests for admiralty jurisdiction as set forth in <u>Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.</u>, 513 U.S. 527, 531-34 (1995). The location test is satisfied if the tort giving rise to the claim occurred on navigable waters. Plaintiffs allege that Park West made misrepresentations regarding the value and authenticity of works being sold at auction and that the named plaintiffs relied on these misrepresentations to their detriment. The auctions were held (and the misrepresentations were made) on cruise ships in international waters. While still at sea, the named plaintiffs contracted to pay sums certain for the artwork they purchased. Where plaintiffs took delivery of the artwork and whether defendants repeated their misrepresentations in the course of their interactions are immaterial: the tort giving rise to plaintiffs' claims occurred on navigable waters.

The connection test involves an assessment of the type of activity involved to determine whether it has a substantial relationship to traditional maritime activity. In addition, the Court must consider whether the tort at issue has "a potentially disruptive impact on maritime commerce." <u>Grubart</u>, 513 U.S. at 534 (quoting <u>Sisson v. Ruby</u>, 497 U.S. 358, 364 n.2 (1990). Here, as in <u>Beegal v. Park West Gallery</u>, 925 A.2d 684, 696 (N.J. Super. Ct. App. Div. 2007), both prongs of the connection test are met.

> Auctions are commonplace, occur on many cruise ships, and are part and parcel of the cruise ship experience. The "character of the activity"– the services and diversions provided for cruise ship passengers while aboard ship – shows a "substantial relationship" to "traditional maritime activity." See [<u>Doe v Celebrity Cruises, Inc.</u>, 394 F.3d 891, 900 (11th Cir. 2004)]. The conduct complained of here has a potentially disruptive impact on maritime commerce – if cruise ship passengers know they are subject to fraudulent conduct while aboard ship, the cruise ship industry will "necessarily suffer." See <u>ibid</u>. It is thus irrelevant that defendants may have planned the fraudulent scheme or trained the auctioneers on land. See <u>Norfolk S. Ry. Co.</u> [v. <u>James N. Kirby Pty. Ltd.</u>, 543 U.S. 14, 25 (2004)] (shore an artificial place to draw the line). Given the primary purpose of admiralty

jurisdiction, protecting maritime commerce, Foremost [Ins. Co. v. Richardson, 457 U.S. 668, 674-75 (1982)], admiralty jurisdiction is proper here.

When admiralty law applies, it preempts state consumer protection laws if there is a conflict. Wilburn Boat Co. v. Fireman's Ins. Co., 348 U.S. 310, 314 (1955). Because the damage provisions of the Washington Consumer Protection Act ("WCPA"), the Connecticut Unfair Trade Practices Act ("CUTPA"), and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") allow for the recovery of attorney's fees and/or treble damages, they conflict with established admiralty law and are preempted. See F.W.F., Inc. v. Detroit Diesel Corp., 494 F. Supp.2d 1342, 1352-53 (S.D. Fla. 2007), aff'd, 308 Fed. Appx. 389 (11th Cir. 2009); DeRossi v. Nat'l Loss Mgmt., 328 F. Supp.2d 283, 288-89 (D. Conn. 2004). Count V of the First Amended Class Action Complaint in Blackman v. Park West Galleries, C08-1310RSL, which alleges a WCPA claim against Holland America, and the FDUTPA claim asserted in Bouverat v. Park West Gallery, C09-1177RSL, therefore fail as a matter of law.

Defendants have not, however, shown that admiralty law preempts all of the consumer protection laws at issue in this litigation. Plaintiffs have asserted claims under the consumer protection laws of 32 jurisdictions, including Washington. In their dispositive motions, defendants address only the laws of Connecticut, Florida, and Washington. Although the consumer protection laws of those jurisdictions are preempted for the reasons discussed above, defendants have not shown that the laws of the other 29 jurisdictions are preempted.

In Bouverat, Park West argues that, even if admiralty law does not govern, any attempt to apply Florida's Deceptive and Unfair Trade Practices Act to conduct occurring in international waters would violate the Commerce Clause of the United States Constitution. The Constitution gives to Congress the power to "regulate Commerce with foreign Nations, and among the several states, and with the Indian Tribes." U.S. Const. Art. I, § 8. Congress' exclusive authority over interstate and international commerce necessarily excludes the states from those spheres of activity. See New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 273

(1988). The Commerce Clause "precludes the application of a state statute to commerce that takes place wholly outside of the [s]tate's borders, whether or not the commerce has effects within the [s]tate." Edgar v. MITE Corp., 457 U.S. 624, 642-43 (1982). Not every statute that impacts interstate or international commerce is invalid, however. Edgar, 457 U.S. at 640 (1982). A statute that advances legitimate state interests, such as the protection of consumers, may survive a Commerce Clause challenge if the state's interests outweighs the burden on interstate or international commerce. Pike v. Bruce Church, 397 U.S. 137, 142 (1970); Midwest Title Loans, Inc. v. Ripley, 616 F. Supp.2d 897, 903 (S.D. Ind. 2009).

Plaintiffs argue that FDUTPA does not run afoul of the Commerce Clause because (a) the legislature was not attempting to directly regulate international commerce, (b) the act is designed to address primarily local concerns, and (c) any effect FDUTPA has on international commerce is incidental and not excessive in relation to the putative local benefits. See ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 48 n.9 (4th Cir. 1983); Syndicated Publ'ns, Inc. v. Montgomery County, 921 F. Supp. 1442, 1448-49 (D. Md. 1996). In the circumstances presented here, FDUTPA does not satisfy the third element. "The critical inquiry [when determining if the effect on international commerce is direct or incidental] is whether the practical effect of the regulation is to control conduct beyond the boundaries of the [s]tate." Healy v. Beer Inst., Inc., 491 U.S. 324, 336 (1989). Despite plaintiffs' effort to highlight every contact Park West has with Florida, the commerce at issue in this case (*i.e.*, the sale and purchase of artwork) occurred on international waters. Bouverat's consumer protection act claim is based on the assumption that the protections of FDUTPA travel with him wherever he goes, such that a shop owner in Milan, a tour guide in Costa Rica, and an auctioneer in the Baltic Sea are all required to comply with the statute if their customer is a Florida resident. "[T]he practical effect of the statute must be evaluated not only by considering the consequence of the statute itself, but also by considering how the challenged statute may interact with the legitimate

regulatory regimes of other [s]tates and what effect would arise if not one, but many or every, [s]tate adopted similar legislation." Healy, 491 U.S. at 336. Because the projection of FDUTPA into international waters would result in the regulation of commerce wholly outside Florida's boundaries and would impose inconsistent regulatory schemes on trading partners, the statute's effect on international commerce is not merely incidental. Not even Florida's substantial and legitimate interest in protecting its citizens from unfair trade practices can justify the direct and substantial effect FDUTPA would have on international commerce if it were applied to foreign transactions whenever a Florida citizen were involved.

Thus, the Commerce Clause precludes application of FDUTPA to consumer art sales occurring on international waters. The reasons for this bar apply equally to all of the other state consumer protection laws asserted by plaintiffs in this case. Accordingly, the Court finds that plaintiffs' consumer protection act claims arising from the sale and purchase of artwork in international waters are barred by the Commerce Clause and must be dismissed.[1]

**D. DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201,** *ET SEQ***.**

Holland America argues that plaintiffs' request for declaratory relief is improper because litigation has been joined and the resolution of plaintiffs' other claims will obviate the need for declaratory relief. In addition to declaratory relief, plaintiffs have also requested injunctive relief. Whether plaintiffs' requests for relief under the Declaratory Judgment Act are duplicative can best be determined later in the litigation. Defendants' motion to dismiss Count VII of the Blackman complaint is therefore denied without prejudice to the issue being raised again.

---

[1] Because plaintiffs' consumer protection act claims are either preempted by admiralty law or barred by the Commerce Clause, the Court need not determine whether plaintiffs adequately alleged the existence of trade or commerce and/ or an unfair trade practice under the various state laws.

ORDER GRANTING IN PART MOTIONS
FOR DISPOSITIVE RELIEF             -8-

For all of the foregoing reasons, the Court GRANTS in part defendants' dispositive motions. Plaintiffs' RICO and state consumer protection claims are hereby dismissed in their entirety. Plaintiffs' unjust enrichment claim and requests for declaratory/injunctive relief may proceed.

Dated this 5th day of January, 2010.

Robert S. Lasnik
United States District Judge