1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                              )
In re:  PARK WEST GALLERIES, INC.,          )        MDL No. 09-2076RSL
MARKETING AND SALES PRACTICES        )
LITIGATION                                                )
_____)
                                                              )        ORDER GRANTING HOLLAND
THIS DOCUMENT RELATES TO:               )        AMERICA'S AND CARNIVAL'S
                                                              )        MOTION TO DISMISS AMENDED
Blackman v. Park West Galleries, Inc.,          )        COMPLAINTS
Case No. C08-1310RSL                               )
                                                              )
Bohm v. Park West Galleries, Inc.                )
Case No. C09-1178RSL                               )
                                                              )
Hatter v. Park West Galleries, Inc.               )
Case No. C09-1242RSL                               )
                                                              )
Mullen v. Park West Galleries, Inc.,             )
Case No. C09-1717RSL.                             )
_____)

        This matter comes before the Court on the "Motion of Defendants Holland

American Line Inc., Holland America Line-USA Inc., Carnival Corporation, and Carnival PLC[]

to Dismiss Second Amended Complaint."  MDL09-2076, Dkt. # 88; C08-1310RSL, Dkt. # 160;

C09-1717RSL, Dkt. # 30; C09-1178RSL, Dkt. # 59; C09-1242RSL, Dkt. # 35.  Defendants seek

dismissal of all of the claims asserted against them in the amended complaints filed in Blackman,

Bohm, Hatter, and Mullen.  Having reviewed the memoranda, declarations, and exhibits

submitted by the parties and having heard the argument of counsel, the Court finds as follows:

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS

**A.  MATTERS OUTSIDE THE PLEADINGS**

In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court's review is generally limited to the contents of the complaint.  Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  The Court may, however, consider documents referenced extensively in the complaint, documents that form the basis of plaintiffs' claim, and matters of judicial notice when determining whether the allegations of the complaint state a claim upon which relief can be granted.  United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003).  Plaintiffs agree that the Court should consider the Declaration of Christy Brett, the Declaration of Mario D. Romero, and the cruise ticket documents submitted by defendants in the context of this motion to dismiss.  The Court has, therefore, considered the documents submitted by defendants when determining whether the complaint, taken as true and construed in the light most favorable to plaintiffs, gives rise to a plausible inference of actionable conduct.  See In re Syntex Corp. Sec. Litig., 95 F.3d 922, 925-26 (9th Cir. 1996); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

**B.  CONTRACTUAL NOTICE AND SUIT LIMITATION REQUIREMENTS**

Holland America's Cruise Ticket Contracts require passengers to provide written notice of a claim within thirty days after conclusion of the cruise and bar lawsuits unless commenced within one year of the cruise.  Carnival's contracts have similar thirty-day notice provisions, but require passengers to sue to recover on claims other than personal injury, illness, or death within six months after the cruise.  Under federal common and maritime law, the contractual notice and suit limitation provisions in the Cruise Ticket Contracts are enforceable if (1) the provisions were reasonably communicated to plaintiffs and (2) they are fundamentally fair.  Wallis v. Princess Cruises, Inc., 306 F.3d 827, 835 (9th Cir. 2002); Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991).

Plaintiffs argue that the notice and suit limitation provisions at issue here are

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS          -2-

"convoluted," are "buried in over a dozen pages of fine print," and require plaintiffs "to sift through pages and pages of legal jargon before coming across these important provisions waiving their legal rights."  Opposition at 18.  In <u>Oltman v. Holland Am. Line, Inc.</u>, 538 F.3d 1271, 1276-77 (9th Cir. 2008), the Ninth Circuit considered a Holland America contract that is virtually identical to the ones at issue in this litigation.  The Ninth Circuit found that the contract satisfied both prongs of the "reasonable communicativeness test" and was therefore enforceable. <u>Oltman</u>, 538 F.3d at 1276-77.  Plaintiffs make no attempt to distinguish the physical characteristics of their tickets or to show that the circumstances surrounding the receipt and retention of their contracts were materially different from the circumstances evaluated in <u>Oltman</u>.  Having reviewed the Cruise Ticket Contracts submitted by defendants, the Court finds that the contents thereof were reasonably communicated to plaintiffs.

Plaintiffs' primary argument is that enforcement of the notice and suit limitation provisions would be fundamentally unfair because plaintiffs could not have discovered their injury until after the artwork arrived at their homes.  Plaintiffs allege that the artwork they purchased was shipped to their homes via Federal Express or the U.S. mail service.  Charles Intha specifically alleges that he received the artwork on June 20, 2007, more than thirty days after his cruise ended.  It is not unreasonable to infer that most of the named plaintiffs would have had very little, if any, time in which to evaluate their artwork before the period for providing written notice expired.

In determining whether a notice or limitations provision is fundamentally fair, the Court considers whether the provision was intended to discourage or invalidate legitimate claims. <u>Shute</u>, 499 U.S. at 595.  In the circumstances presented here, enforcing the written notice requirement would effectively destroy plaintiffs' ability to seek redress for harms they could not have known about during most, if not all, of the thirty-day notice period.  Passengers on cruise ships may be injured in various ways.  Certain injuries, such as physical damage,

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS            -3-

shoddy service, or theft, are immediately apparent or readily discoverable through the exercise of reasonable diligence.  In such situations, a cruise line may justly require prompt notice so that it has an opportunity to investigate and adjust the claim.  Where the passenger's injury is hidden for weeks or months, however, such as when the cruise line improperly bills a credit card or goods purchased on board are not delivered as promised, requiring written notice within thirty days of the end of the cruise has the obvious effect of precluding otherwise legitimate claims. Plaintiffs, not knowing that they had been defrauded and not able to ascertain the actual value of the goods purchased, would not have had any reason to consult the terms and conditions of the Cruise Ticket Contract until after the notice period had already run.  See Racca v. Celebrity Cruises, Inc., 2010 WL 1688595 at *2 (11th Cir. Apr. 27, 2010) (finding that it is not unreasonable to expect passengers to read the cruise contract once the fact of injury is ascertained).  In these circumstances, the written notice provision in plaintiffs' ticket contracts "is so unfair . . . that they should be relieved of its constraints."  Chan v. Society Expeditions, Inc., 123 F.3d 1287, 1296 (9th Cir. 1997).

The same cannot, however, be said of the suit limitation provision.  Plaintiffs had ample time to evaluate the quality and provenance of the art purchased before either of the limitation periods expired.  Plaintiffs contractually agreed to bring suit within a specified time period, making it incumbent upon them to investigate potential claims after the artwork came into their possession.[1]  Plaintiffs acknowledge that they did not file their claims within Carnival's six-month limitation period and/or Holland America's one-year limitation period. Opposition at 30-31 (Table A).  Instead, they argue that defendants fraudulently concealed their

---

[1] The "fundamental fairness" analysis is theoretically and practically distinct from the discovery rule.  The former applies to contractual limitations periods in admiralty and allows parties to allocate the risks of non-discovery as they see fit unless an injustice would result.  The latter was created by the courts to ameliorate the harsh effects of legislatively-enacted limitations periods over which plaintiffs had no control.

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS          -4-

wrongdoing and should be barred from enforcing the contractual limitation periods under the doctrine of equitable estoppel.

A defendant can be equitably estopped from raising the limitation period as a defense if it takes actions or makes representations that prevent plaintiff from timely filing suit. The primary focus of the analysis is defendant's conduct/misrepresentations and whether plaintiff reasonably relied on them to his detriment. See Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116, 1121 (9th Cir. 2006).

Plaintiffs argue that defendants took steps to conceal the alleged scheme to sell overpriced artwork by (1) failing to reveal the scheme and/or the true value of the artwork sold, (2) continuing to sell artwork on cruise ships, and (3) limiting access to company documents. See C08-1310RSL, Dkt. # 147 at ¶¶ 153, 272-277.  Plaintiffs have not, however, alleged that they sought information from defendants and were rebuffed or that defendants took extraordinary steps to make information unavailable.  In essence, plaintiffs argue that the same conduct that gave rise to their causes of action (selling overpriced artwork on cruise ships without revealing actual valuation) also supports equitable estoppel.  A plaintiff must, however, point to "some active conduct by the defendant above and beyond the wrongdoing upon which the plaintiff's claim is based" in order to trigger equitable estoppel.  Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1052 (9th Cir. 2008), cert. denied, __ U.S. __, 129 S. Ct. 1997 (2009).  For example, if defendants had stated that they would not assert the limitation period as a defense or had promised to reimburse plaintiffs' losses only to renege the day after the limitations period expired, they might be equitably estopped.

In the circumstances presented here, plaintiffs would have the Court find defendants guilty of fraudulent concealment merely because they did not tell plaintiffs that they had sold them overpriced art.  Such an argument merges the substantive wrong with the estoppel doctrine, effectively eliminating the statute of limitations.  Id. (quoting Cada, 920 F.2d at 451).

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS                    -5-

In the absence of a misrepresentation or conduct by defendants aimed at concealing the underlying tort alleged in the complaints or otherwise preventing plaintiffs from timely asserting their rights, equitable estoppel is not applicable.  Plaintiffs' claims against Holland America and Carnival are barred by the suit limitation provisions in their Cruise Ticket Contracts.[2]

## C. STATUTES OF LIMITATION

Defendants argue that certain claims asserted by plaintiffs Blackman, Manzone, Bohm, Lee, Hatter, and Mullen are also barred by the applicable statutes of limitation.  For purposes of this analysis, the allegations asserted by each of these plaintiffs are similar.  Each plaintiff purchased artwork from Park West more than three or four years before the Blackman class action complaint was filed on September 2, 2008.  Most of the plaintiffs had their work(s) appraised by Park West at or around the time of purchase and were assured that the art was worth more than they had paid for it.  All plaintiffs continued to believe that the appraisals were valid until 2008.  In Bohm's case, he began to doubt the validity of the Park West appraisals when he was unable to locate a willing buyer in January 2008.  The other plaintiffs became suspicious after the New York Times published an article entitled "Art Auctions on Cruise Ships Lead to Anger Accusations and Lawsuits."  Plaintiffs then conducted their own investigations and filed suit.  Based on these facts, plaintiffs argue that their claims are timely under the discovery rule and/or theories of equitable tolling and equitable estoppel.

### 1.  Discovery Rule

The applicable statutes of limitation began to run when plaintiffs knew or should have known of the injuries that underlie their causes of action.  Pincay v. Andrews, 238 F.3d 1106, 1108 (9th Cir. 2001).  Plaintiffs affirmatively plead that they did not suspect that they had paid too much for their artwork until 2008.  They allege facts, such as the contemporaneous

---

[2]  Because there may be other cruise line passengers who are able to satisfy the contractual notice and limitation provisions, the Court will consider defendants' other arguments on their merits.

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS          -6-

Park West appraisals, which suggest that they took steps to safeguard their interests, and they identify a specific event which triggered suspicion and further investigation. Based on the facts asserted, the Court cannot conclude as a matter of law that plaintiffs were negligent in failing to discover sooner that defendants had sold them, or conspired to sell them, artwork at inflated prices.

## 2. Equitable Tolling

The discovery rule delays the start of the limitations period until the plaintiff knows or should have known of his injury. Equitable tolling, on the other hand, serves to extend the limitations period once the injury is apparent if plaintiff, acting with due diligence, "cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." Garcia v. Brockway, 526 F.3d 456, 465 (9th Cir. 2008) (quoting Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir. 1990) (J. Posner)). Plaintiffs claim that until 2008 they were unaware that they had paid too much for the artwork purchased from Park West. They do not assert that they were aware of their injuries but were unable to ascertain whether the overpayment was the result of wrongdoing or who caused the injuries. In fact, plaintiffs allege that, once they had reason to suspect the validity of the appraisals obtained from Park West, they were able to conduct additional investigation and initiate suit in a timely manner.[3] Equitable tolling does not, therefore, apply.

---

[3] Plaintiffs allege that the information they needed to discover and prosecute their claims was under defendants' exclusive control and was not freely available to plaintiffs. See, e.g., C08-1310RSL, Dkt.# 147 at ¶ 274. Plaintiffs do not allege what steps they took to obtain information from defendants (in fact, most plaintiffs allege that they made no attempt to communicate with defendants after their suspicions were aroused) or what information, other than the fact of injury, was needed in order to ascertain wrongdoing and the identity of the defendants.

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS            -7-

### 3. Equitable Estoppel

For the reasons discussed above in Section B, equitable estoppel is not applicable.

## D. ADEQUACY OF PLEADING UNDER FED. R. CIV. P. 8

Defendants argue that all of plaintiffs' claims should be dismissed because they failed to allege any wrongdoing on the part of Holland America or Carnival. In defendants' view, plaintiffs have failed to plead facts showing that Holland America and/or Carnival were aware of Park West's scheme to sell over-priced artwork to unsuspecting passengers. Absent facts plausibly suggesting that defendants had knowledge of Park West's fraud, defendants argue that their conduct could not generate liability under any of the theories asserted by plaintiffs.

Although the pleading standard set forth in Fed. R. Civ. P. 8(a) remains unchanged, the Supreme Court's decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-55 (2007), and Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1951 (2009), require plaintiffs to present more facts at the pleading stage in order to survive a motion to dismiss. In Twombly, the Supreme Court considered an allegation that defendants had conspired to restrain trade in violation of § 1 of the Sherman Act. The Court determined that "a formulaic recitation of the elements of a cause of action" is conclusory and therefore not entitled to the presumption of truth that normally attaches to the allegations of a complaint in the 12(b)(6) context. Twombly, 550 U.S. at 555. See also Iqbal, 129 S. Ct. at 1951 (disregarding broad allegations of discriminatory intent in a Bivens action). The Court rejected the "no set of facts" language set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), on the ground that plaintiffs should not be allowed to assert claims in federal court based on nothing more than the prospect of unearthing supporting evidence during discovery. Twombly, 550 U.S. at 561-62. Construing Rule 8(a) anew, the Supreme Court imposed on plaintiffs the burden of pleading enough facts to raise a right to relief above the speculative level, such that the asserted claim is "plausible." Twombly, 550 U.S. at

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS        -8-

555, 570.

In order to determine whether the allegations of a complaint "show[] that the pleader is entitled to relief" under Rule 8(a), the court now applies a two step process. First, the court must identify and disregard any allegations that are legal conclusions, as opposed to factual allegations. Unfortunately, the line between legal conclusion and factual allegation is not readily apparent. Although an allegation of knowledge or intent is logically an allegation of fact regarding defendant's state of mind, Iqbal suggests that such allegations should be disregarded if not supported by additional, more concrete, factual allegations.

In the second step of the analysis, the court must determine whether the factual allegations that remain give rise to a reasonable inference that the defendant is liable for the misconduct alleged. Twombly, 550 U.S. at 556; Iqbal, 129 S. Ct. at 1949. Although detailed factual allegations are not required, the allegations must be "suggestive enough to render [the claim] plausible." Twombly, 550 U.S. at 555-56. In order to determine whether a claim rises above the speculative and attains plausibility, courts must consider not only the pleadings and documents that are an integral part of the complaint, but also any "obvious alternative explanation" for defendant's conduct (Twombly, 550 U.S. at 567) based on the court's "judicial experience and common sense" (Iqbal, 129 S. Ct. at 1950). How many supporting facts are necessary to make a claim plausible in light of the other competing explanations must be decided on a case-by-case basis. Iqbal, 129 S. Ct. at 1950.

Plaintiffs allege that Holland America and Carnival knew that Park West was employing a fraudulent scheme to sell over-priced artwork on their cruise ships. This allegation, standing alone, would probably not be sufficient under Iqbal, but plaintiffs have alleged more. Plaintiffs allege that Holland America and Carnival have offered art auctions as entertainment for their passengers for a number of years and that Park West has been the exclusive provider of these services since 1999. According to plaintiffs, the cruise lines' employees assist Park West

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS          -9-

with almost every aspect of the auctions, from setting up the auction room to filling out paperwork after a sale has been made.  The sales techniques employed, the representations made to potential customers, and, to a certain extent, the character, quality, and uniqueness of the art sold are known to Holland America and Carnival.  Nevertheless, the cruise line defendants agreed to give Park West an exclusive concession on their ships, thereby suggesting approval of its business practices.  In addition, the cruise lines have negotiated a payment arrangement whereby their income is directly related not to the space Park West uses or the costs of the services rendered to Park West, but to the number of works Park West sells and the price at which those sales are made.

From these facts, one could reasonably infer that the cruise lines knew that Park West was engaged in a fraudulent venture and that they agreed to further the scheme.  Of course, one could also reasonably infer that the cruise lines were simply innocent landlords who unwittingly exposed their passengers to a corrupt merchant.  Whether plaintiffs will ultimately prove that the cruise lines were knowing participants in Park West's fraud is not the issue on this motion to dismiss.  Because the allegation of knowledge is supported by specific factual allegations that "raise a right to relief above the speculative level" and render the claim "plausible," it satisfies the pleading standard set forth in Rule 8(a).  <u>Twombly</u>, 550 U.S. at 555-56.

**E. RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT ("RICO")**

### 1. Adequacy of Pleading Under Fed. R. Civ. P. 9(b)

Holland America and Carnival argue that plaintiffs have failed to allege with the particularity required by Fed. R. Civ. P. 9(b) the existence of an agreement or the use of wires and mails by these defendants in furtherance of the fraudulent scheme described in the complaints.  For the most part, defendants misconstrue the reach of Rule 9(b) in this context and ignore the allegations of the complaints.

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS          -10-

1

2

3   Plaintiffs allege that Park West and the cruise line defendants used the mails

4   and/or wires to commit or assist in the commission of the sale of overpriced artwork at sea, in

5   violation of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.  Mail or wire

6   fraud involves three elements:  (1) the formation of a scheme to defraud, (2) the use of the

7   United States mails or wires in furtherance of the scheme, and (3) defendants' specific intent to

8   deceive or defraud.  United States v. McNeil, 320 F.3d 1034, 1040 (9th Cir. 2003).  Most of the

9   elements, such as the existence of an agreement and defendant's state of mind, may be plead

10  with general, rather than particularized, allegations.  "The only aspects of [mail or] wire fraud

11  that require particularized allegations are the factual circumstances of the fraud itself."  Odom v.

12  Microsoft Corp., 486 F.3d 541, 554 (9th Cir. 2007).

13          Pursuant to Fed. R. Civ. P. 9(b), the circumstances of a fraud must be plead "with

14  particularity" (Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004)), which

15  means that the plaintiff must state the time, place, and specific content of the false

16  representations as well as the identities of the parties thereto (Alan Neuman Productions, Inc. v.

17  Albright, 862 F.2d 1388, 1392-93 (9th Cir. 1988) (quoting Schreiber Distrib. Co. v. Serv-Well

18  Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986))).  Although plaintiffs are not able to provide

19  the names of the individual Park West auctioneers who allegedly misrepresented the value of the

20  artwork sold, they do identify the time, place, and specific content of the offending statements,

21  as well as the relationship of the speaker to defendants.  Plaintiffs' allege that they relied on the

22  following statements made by Park West employees leading up to or during the on-board

23  auctions:

24  • the works purchased by plaintiffs were a "good" or "great" investment and

25  • the works would appraise for "many times" the price paid at auction.

26  ORDER GRANTING HOLLAND
    AMERICA'S AND CARNIVAL'S MOTION
    TO DISMISS AMENDED COMPLAINTS          -11-

See, e.g., C08-1310RSL, Dkt. # 147 at ¶¶ 162(d), 184(d), and 213(d).  These allegations provide a factual basis for the averment of fraud regarding valuation and are sufficient to allow defendants to prepare an answer.

To the extent plaintiffs' fraud claim is based on misrepresentations regarding the provenance and authenticity of the purchased works, however, most of the plaintiffs have failed to provide any factual allegations in support of these asserted misrepresentations.  In general, plaintiffs do not identify any statements regarding the provenance or authorship of the works they purchased beyond the bare name of the work and its author.  There are no allegations from which defendants could glean what was said on these subjects, who said it, when they said it, or whether plaintiffs relied thereon.  Some plaintiffs, such as Ms. Kean, cite statements made as part of the Park West's appraisal.  C08-1310RSL, Dkt. # 147 at ¶ 171(e) and Ex. D.  Even if the "lithograph" representation were both false and material, Ms. Kean could not have relied thereon because the representation was made a month after she purchased the work.  C08-1310RSL, Dkt. # 147 at ¶ 169 and Ex. D.  Because most of plaintiffs' allegations of fraud center on overstatements of investment and appraisal value, the complaints do not provide Holland America or Carnival with sufficient information to defend a fraud claim related to provenance or authenticity.[4]

For purposes of their RICO claim, plaintiffs have identified specific mail and wire communications made in furtherance of the scheme to sell overpriced artwork on defendants' cruise ships.  Plaintiff Blackman, for example, received a certificate of authenticity from Park West and Fine Art Sales via the U.S. mail service on or about June 17, 2003, and plaintiff Mullen received three appraisals from Park West via the U.S. mail service on or about June 22,

---

[4] Other plaintiffs, however, have identified specific statements regarding the "originality" of their Dali "etching" or the "historic significance" of their "rare" Picasso at the time of the auction.  See, e.g., C08-1310RSL, Dkt. # 147 at ¶¶ 213(e), 220, 225(d) and 236. The Court notes without deciding that these allegations may satisfy Rule 9(b).

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS           -12-

2005, June 30, 2005, and August 1, 2005.  Although these communications did not directly injure plaintiffs, the use of the mail or wire need not be an essential element of the scheme in order to violate the mail and wire fraud statutes.  <u>Pereira v. United States</u>, 347 U.S. 1, 8 (1954).  A violation occurs if the communication "is part of the execution of the scheme as conceived by the perpetrator at the time."  <u>Schmuck v. United States</u>, 489 U.S. 705, 715 (1989).  It is enough if the continuing success of the fraudulent venture depends upon the transmission of items or information via the mails or wires.  <u>Id.</u> at 711-14 (the successful transfer of title registration documents through the mails was an essential step in defendant's continuing odometer-tampering scheme because it ensured that the retail dealers on whose unwitting cooperation the scheme depended would continue to work with defendant).  Because the scheme alleged by plaintiffs is a long-standing venture, the fact-finder could conclude that the transmission of certificates, appraisals, and correspondence was necessary to ensure the continued viability of the enterprise.  To the extent Rule 9(b) applies to plaintiffs' allegations of wire and mail fraud related to the value of the artwork, they have satisfied the heightened pleading requirements.

## 2.  18 U.S.C. § 1962(c)

A claim under § 1962(c) of RICO requires allegations that defendants conducted or participated in the conduct of an enterprise through a pattern of racketeering activity.  <u>See</u>, <u>e.g.</u>, <u>Miller v. Yokohama Tire Corp.</u>, 358 F.3d 616, 620 (9th Cir. 2004).  Simple involvement in the affairs of an enterprise is insufficient:  to "conduct or participate in the conduct" of the enterprise's affairs, a defendant must have some part in controlling or directing the affairs.  <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 177-79 (1993).  Holland America and Carnival argue that their business relationship with Park West – including their contractual right to a percentage of the proceeds from Park West's auctions – is insufficient to establish control over the enterprise's affairs.  <u>Goren v. New Visions Int'l, Inc.</u>, 156 F.3d 721, 728 (7th Cir. 1998) ("Indeed, simply performing services for an enterprise, even with knowledge of the enterprise's

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS          -13-

illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and the management of the enterprise itself.").

Despite defendants' clear challenge to the viability of plaintiffs' § 1962(c) claim (Motion at 16), plaintiffs offer no response. The Court has been unable to locate a factual allegation that could support a finding that Holland America or Carnival controlled any aspect of the marketing, sales, or business of the alleged enterprise. Because the alleged facts "do not permit the court to infer more than the mere possibility of misconduct," plaintiffs have failed to show that they are entitled to relief under § 1962(c). Iqbal, 129 S. Ct. at 1950.

### 3.  18 U.S.C. § 1962(d)

Section 1962(d) makes it unlawful for any person to conspire to violate § 1962(a), (b), or (c) of RICO. Although the agreement to violate RICO need not be express, the factual allegations of the complaint, including the words, actions, and relationship between the parties, must raise an inference that an agreement exists. Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 773, 774-75 (9th Cir. 2002). Once an agreement is demonstrated, all conspirators, whether or not they individually violate RICO, are jointly and severally liable for the acts of their co-conspirators. Id. at 775. See also U.S. v. Fiander, 547 F.3d 1036, 1041 (9th Cir. 2008) (evidence that defendant knew about and agreed to facilitate a violation of RICO supports a finding of conspiracy, even if defendant did not commit the substantive offense). Plaintiffs allege that Park West and the cruise lines had a long-standing relationship, that their employees worked together to conduct almost every facet of the auctions, that they were aware of the efforts each made to attract passengers to the auction and to sell artwork, and that the cruise lines had a direct financial interest in every sale made on their ships. These allegations raise an inference of an agreement that is at least plausible. See Newcal Indus., Inc. v. Ikon

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS          -14-

Office Solution, 513 F.3d 1038, 1056 (9th Cir. 2008) (inference of specific intent raised by allegations of knowledge, participation in certain activities, and profit motive).

**F.  CONTRACTUAL RELEASE FROM LIABILITY**

Plaintiffs seek to hold Holland America and Carnival liable for their own culpable conduct.  Defendants appear to concede that the release provisions in the Cruise Ticket Contracts would not bar such claims.  Reply at 8.

**G.  ADMIRALTY – COMMON LAW AIDING AND ABETTING FRAUD**

Plaintiffs allege that the cruise line defendants knew of Park West's scheme to defraud passengers and assisted, aided, and abetted Park West's efforts to sell worthless or overvalued artwork during the cruises.  Defendants seek dismissal of this claim because (1) there are no cases recognizing a federal maritime claim for aiding and abetting fraud, (2) the Court should decline to import into admiralty a cause of action that is barely acknowledged in Florida and Washington, and (3) plaintiffs have failed to allege this claim with the particularity required by Rule 9(b).

Assuming the two-part test of Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 13 U.S. 527, 534 (1995), is satisfied, it appears that the underlying fraud claim against Park West falls within the court's admiralty jurisdiction.  Defendants have not identified any characteristic or principle of an aiding and abetting claim that would preclude the application of substantive admiralty law where the underlying wrong is also subject to admiralty jurisdiction.  Even if an aiding and abetting fraud claim has not yet been recognized, the "established and continuing tradition of federal common lawmaking in admiralty" suggests that dismissal is not appropriate absent some showing that the enactments of Congress or existing maritime law preclude such a claim.  Am. Dredging Co. v. Miller, 510 U.S. 443, 455 (1994).

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS          -15-

Defendants have not shown that either Washington or Florida have refused to recognize an aiding and abetting fraud claim. The claim is described in Restatement (Second) of Torts § 876(b) and was recently acknowledged as a well-settled "general rule" by the appellate courts of Washington. See Vanguard Int'l, Inc. v. Guangdong Fully, Ltd., 142 Wn. App. 1026, 2008 WL 116268 at *4 (2008). Because the elements of the claim are properly alleged, it may proceed.

The underlying fraud – Park West's misrepresentations regarding the value of the artwork sold – is adequately plead.[5] The other elements of the aiding and abetting claim can be alleged generally, rather than particularly.

**H. UNJUST ENRICHMENT**

Plaintiffs allege facts supporting all of the elements of an unjust enrichment claim under Washington law: (1) a benefit conferred, (2) knowledge of the benefit, and (3) circumstances that would make it unjust for Holland American and Carnival to retain the benefit. Young v. Young, 164 Wn.2d 477, 484 (2008). Defendants argue that because plaintiffs have a contractual relationship with Park West, a quasi-contract claim cannot lie against the cruise lines unless and until plaintiff shows fraud in the inducement and/or breach. In Washington, "[a] party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract." Chandler v. Wash. Toll Bridge Auth., 17 Wn.2d 591, 604 (1943). The cruise line defendants are not parties to the invoices between plaintiffs and Park West, however, and there is no evidence that recognizing an implied duty in these circumstances would contravene any provision of the invoices. Defendants offer no

---

[5] As discussed in Section E.1., most of the plaintiffs have not adequately pled an intentional misrepresentation regarding the provenance or authenticity of the artwork they purchased.

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS          -16-

logical connection between plaintiffs' contracts with Park West and the assertion of a quasi-contract claim against the cruise lines.  Plaintiffs' claim of unjust enrichment may proceed.

## I. AGENCY AND CIVIL CONSPIRACY

Plaintiffs allege that defendants were the agents and principals of each other and that they were acting within the scope of their agency when selling or assisting the sale of overpriced artwork at auction.  Plaintiffs also allege that the relationship between defendants and their actions in furtherance of the fraudulent sales give rise to a plausible inference that there was an agreement or conspiracy to defraud plaintiffs.

Defendants argue that plaintiffs' factual allegations cannot support a finding that Holland American and/or Carnival expressly or impliedly authorized Park West to act on their behalf.  Although most of plaintiffs' allegations are unhelpful on this point, plaintiffs do allege that the cruise lines allowed Park West auctioneers to identify themselves as crew members when circulating among the passengers.  See, e.g., C08-1310RSL, Dkt. # 147 at ¶ 63.  If proven, this allegation could support a finding that an agency agreement existed (actual agency) or that defendants' conduct or statements caused plaintiffs to reasonably believe that an agency relationship existed (apparent agency).  Plaintiffs' claim of agency may, therefore, proceed.

For purposes of the civil conspiracy claim, the underlying fraud – Park West's misrepresentations regarding the value of the artwork sold – is adequately plead under Rule 9(b).[6]  The other elements of the conspiracy claim, including the existence of an agreement, can be alleged generally.  Plaintiffs have alleged facts from which one could infer the existence of an agreement.  Defendants offer no reason to assume that South Carolina conspiracy law applies to this case.

---

[6]  As discussed in Section E.1., most of the plaintiffs have not adequately pled an intentional misrepresentation regarding the provenance or authenticity of the artwork they purchased.

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS          -17-

**J. DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201, *ET SEQ*.**

Plaintiffs seek a declaration that (a) Park West misrepresented the authorship, authenticity, and genuineness of the art sold to plaintiffs, and (b) defendants owed plaintiffs an affirmative duty to disclose material facts about the artwork sold on board the cruise ships. Holland American and Carnival argue that plaintiffs' request for declaratory relief is improper because the claim is duplicative of other relief sought in this litigation. It is possible, however, that a declaration regarding the duties owed by cruise lines to their passengers could be appropriate, such that the declaratory relief claim would not be duplicative.

For all of the foregoing reasons, the Court GRANTS Holland America's and Carnival's motion to dismiss (MDL09-2076, Dkt. # 88; C08-1310RSL, Dkt. # 160; C09-1717RSL, Dkt. # 30; C09-1178RSL, Dkt. # 59; C09-1242RSL, Dkt. # 35). Because plaintiffs' claims are barred by the suit limitation provisions contained in the Cruise Ticket Contacts, their claims against Holland American and Carnival are hereby dismissed in their entirety.

Dated this 25th day of June, 2010.

*Mlt S Lasnik*

Robert S. Lasnik
United States District Judge

ORDER GRANTING HOLLAND
AMERICA'S AND CARNIVAL'S MOTION
TO DISMISS AMENDED COMPLAINTS          -18-