UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
)
In re: PARK WEST GALLERIES, INC., )   MDL No. 09-2076RSL
MARKETING AND SALES PRACTICES )
LITIGATION )
_____)
)   ORDER GRANTING CELEBRITY AND
THIS DOCUMENT RELATES TO: )   ROYAL CARIBBEAN'S MOTION TO
)   DISMISS SECOND AMENDED
Blackman v. Park West Galleries, Inc., )   CLASS ACTION COMPLAINT
Case No. C08-1310RSL. )
_____)

This matter comes before the Court on "Defendants Royal Caribbean Cruises Ltd.'s and Celebrity Cruises Inc.'s Motion to Dismiss Second Amended Class Action Complaint." MDL09-2076, Dkt. # 78; C08-1310RSL, Dkt. # 158. Defendants seek dismissal of all of the claims asserted against them in the Second Amended Class Action Complaint ("SAC"). Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the argument of counsel, the Court finds as follows:

**A. MATTERS OUTSIDE THE PLEADINGS**

In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court's review is generally limited to the contents of the complaint. Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). The Court may, however, consider documents referenced extensively in the complaint, documents that form the basis of plaintiffs' claim, and matters of judicial notice when determining whether the allegations of the complaint state a claim upon

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT

which relief can be granted. United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003). Plaintiffs agree that the Court should consider the Declaration of David Banciella and the Cruise Ticket Contracts submitted by defendants in the context of this motion to dismiss. The Court has, therefore, considered the documents submitted by defendants when determining whether the complaint, taken as true and construed in the light most favorable to plaintiffs, gives rise to a plausible inference of actionable conduct. See In re Syntex Corp. Sec. Litig., 95 F.3d 922, 925-26 (9th Cir. 1996); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

**B. SHOTGUN PLEADING**

Defendants argue that the entire SAC should be dismissed because each count "expressly incorporates all of the allegations contained in the prior counts . . . ." Motion at 3. In making this argument, defendants do not identify any rule of civil procedure or pleading standard with which plaintiffs have failed to comply. Pursuant to Fed. R. Civ. P. 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Having reviewed the allegations of the SAC, the Court finds that the incorporation by reference of all preceding paragraphs does not adversely impact the clarity of the pleading or justify dismissal in the circumstance presented here. The SAC provides 'fair notice' of the nature of plaintiffs' claims against defendants and the 'grounds' on which the claims rest. See Twombly, 550 U.S. at 555 n.3.

**C. STATUTES OF LIMITATION**

Defendants argue that all of the claims asserted by Donna Manzone and Amy Auriemma, as well as Mark and Cathy Weber's claims arising from their 2005 art purchase(s), are barred by the applicable statutes of limitation. For purposes of this analysis, the allegations asserted by each of these plaintiffs are similar. Each plaintiff purchased artwork from Park West before January 15, 2006. Each plaintiff had the work(s) appraised by Park West at or around the

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT         -2-

time of purchase and was assured that the art was worth more than they had paid for it.  All plaintiffs continued to believe that the appraisal was valid until 2008 when the New York times published an article entitled "Art Auctions on Cruise Ships Lead to Anger Accusations and Lawsuits."  After the article was published, plaintiffs conducted their own investigation and promptly filed suit.  Based on these facts, Manzone, Auriemma, and the Webers argue that their claims, most of which had to be asserted within four years of accrual, are timely under the discovery rule and/or theories of equitable tolling and equitable estoppel.

### 1. Discovery Rule

The applicable statutes of limitation began to run when plaintiffs knew or should have known of the injuries that underlie their causes of action.  Pincay v. Andrews, 238 F.3d 1106, 1108 (9th Cir. 2001).  Plaintiffs affirmatively plead that they did not suspect that they had paid too much for their artwork until mid-2008.  They allege facts, such as the contemporaneous Park West appraisals, which suggest that they took reasonable steps to safeguard their interests, and they identify a specific event which triggered suspicion and further investigation.  Based on the facts asserted, the Court cannot conclude as a matter of law that plaintiffs were negligent in failing to discover sooner that defendants had sold them, or conspired to sell them, artwork at inflated prices.

### 2. Equitable Tolling

The discovery rule delays the start of the limitations period until the plaintiff knows or should have known of his injury.  Equitable tolling, on the other hand, serves to extend the limitations period once the injury is apparent if plaintiff, acting with due diligence, "cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant."  Garcia v. Brockway, 526 F.3d 456, 465 (9th Cir. 2008) (quoting Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir. 1990) (J. Posner)).  Manzone, Auriemma, and the Webers  claim that until mid-2008 they were unaware that they

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT          -3-

had paid too much for the artwork purchased from Park West. They do not assert that they were aware of their injuries but were unable to ascertain whether the overpayment was the result of wrongdoing or who caused the injuries. In fact, plaintiffs allege that, once they had reason to suspect the validity of the appraisals obtained from Park West, they were able to conduct additional investigation and initiate suit in a timely manner.[1] Equitable tolling does not, therefore, apply.

### 3. Equitable Estoppel

A defendant can be equitably estopped from raising the statute of limitations as a defense if he takes actions or makes representations that prevent plaintiff from filing suit within the limitations period. The primary focus of the analysis is defendant's conduct/ misrepresentations and whether plaintiff reasonably relied on them to his detriment. See Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116, 1121 (9th Cir. 2006).

Plaintiffs argue that defendants took steps to conceal the alleged scheme to sell overpriced artwork by (1) failing to reveal the scheme and/or the true value of the artwork sold, (2) continuing to sell artwork on cruise ships, and (3) limiting access to company documents. SAC ¶¶ 153, 272-277. Plaintiffs have not, however, alleged that they sought information from defendants and were rebuffed or that defendants took extraordinary steps to make information unavailable. In essence, plaintiffs argue that the same conduct that gave rise to their causes of action (selling overpriced artwork on cruise ships without revealing actual valuation) also supports equitable estoppel. A plaintiff must, however, point to "some active conduct by the

---

[1] In the section of the SAC specifically dedicated to averments related to the statutes of limitation, plaintiffs allege that the information they needed to discover and prosecute their claims was under defendant's exclusive control and was not freely available to plaintiffs. SAC ¶ 274. Plaintiffs do not allege what steps they took to obtain information from defendants (in fact, they allege that they made no attempt to communicate with defendants after their suspicions were aroused) or what information, other than the fact of injury, was needed in order to ascertain wrongdoing and the identity of the defendants.

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT           -4-

defendant above and beyond the wrongdoing upon which the plaintiff's claim is based" in order to trigger equitable estoppel. Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1052 (9th Cir. 2008), cert. denied, __ U.S. __, 129 S. Ct. 1997 (2009). For example, if defendants had stated that they would not assert the statute of limitation as a defense or had promised to reimburse plaintiffs' losses only to renege the day after the limitations period expired, they might be equitably estopped.

In the circumstances presented here, plaintiffs would have the Court find defendants guilty of fraudulent concealment merely because they did not tell plaintiffs that they had sold them overpriced art. Such an argument merges the substantive wrong with the estoppel doctrine, effectively eliminating the statute of limitations. Id. (quoting Cada, 920 F.2d at 451). In the absence of a misrepresentation or conduct by defendants aimed at concealing the underlying tort alleged in the SAC or otherwise preventing plaintiffs from timely asserting their rights, equitable estoppel is not applicable.

**D. CONTRACTUAL RELEASE FROM LIABILITY**

Plaintiffs seek to hold Royal Caribbean and Celebrity liable for their own culpable conduct. Defendants appear to concede that the release provisions in the cruise ticket contracts would not bar such claims. Reply at 3.

**E. CONTRACTUAL NOTICE AND SUIT LIMITATION REQUIREMENTS**

Royal Caribbean's and Celebrity's Cruise Ticket Contracts require passengers to provide written notice of a claim within six months of injury and to file suit on the claim within one year. Under federal common and maritime law, the contractual notice and suit limitation provisions in the Cruise Ticket Contracts are enforceable if (1) the provisions were reasonably communicated to plaintiffs and (2) they are fundamentally fair. Wallis v. Princess Cruises, Inc., 306 F.3d 827, 835 (9th Cir. 2002); Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991).

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT          -5-

Plaintiffs argue that the notice and suit limitation provisions at issue here are "convoluted," are "buried in over a dozen pages of fine print," and require plaintiffs "to sift through pages and pages of legal jargon before coming across these important provisions waiving their legal rights." Opposition at 21. In <u>Oltman v. Holland Am. Line, Inc.</u>, 538 F.3d 1271, 1276-77 (9th Cir. 2008), the Ninth Circuit considered a Holland America contract that is substantially similar to the ones at issue in this litigation. The Ninth Circuit found that the contract satisfied both prongs of the "reasonable communicativeness test" and was therefore enforceable. <u>Oltman</u>, 538 F.3d at 1276-77. Plaintiffs make no attempt to distinguish the physical characteristics of their tickets or to show that the circumstances surrounding the receipt and retention of their contracts were materially different from the circumstances evaluated in <u>Oltman</u>. Having reviewed the Cruise Ticket Contracts submitted by defendants, the Court finds that the contents thereof were reasonably communicated to plaintiffs.

Plaintiffs' primary argument is that enforcement of the notice and suit limitation provisions would be fundamentally unfair because plaintiffs could not have discovered their injury until after the artwork arrived at their homes. Plaintiffs allege that the artwork they purchased was shipped to their homes via Federal Express or the U.S. mail service. Charles Intha specifically alleges that he received the artwork on June 20, 2007, approximately two months after his cruise ended. It is not unreasonable to infer that there would have been a delay of one or two months before each of the named plaintiffs received their purchased artwork.

In determining whether a notice or limitations provision is fundamentally fair, the Court considers whether the provision was intended to discourage or invalidate legitimate claims. <u>Shute</u>, 499 U.S. at 595. In the circumstances presented here, enforcing the six-month notice and one-year suit limitation requirements against plaintiffs would not be "so unfair . . . that they should be relieved of its constraints." <u>Chan v. Society Expeditions, Inc.</u>, 123 F.3d 1287, 1296 (9th Cir. 1997). Defendants had sensible and non-punitive justifications for

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT          -6-

negotiating relatively short notice and suit limitation provisions: prompt notice would provide the cruise lines an opportunity to investigate and adjust claims and liabilities arising out of a particular cruise would be cut off after a reasonable period. The contractual periods, while requiring diligence on a claimant's part, are not unreasonably short. Plaintiffs had ample time to evaluate the quality and provenance of the art purchased before either of the contractual periods expired. Because plaintiffs contractually agreed to the notice and suit limitation provisions, it was incumbent upon them to investigate potential claims after the artwork came into their possession.[2]

Plaintiffs acknowledge that they did not file their claims within the limitations period established in the Cruise Ticket Contracts. Opposition at 40 (Table A). Instead, they argue that defendants fraudulently concealed their wrongdoing and should be barred from enforcing the contractual limitation periods under the doctrine of equitable estoppel. For the reasons set forth in Section C.3., equitable estoppel is not applicable. Plaintiffs' claims against Royal Caribbean and Celebrity are therefore barred by the notice and suit limitation provisions in their Cruise Ticket Contracts.[3]

## F. ADEQUACY OF DAMAGE ALLEGATIONS

Defendants argue that the claims of Auriemma and the Webers should be dismissed for failure to adequately plead that they were injured. After the New York Times published an article exposing the alleged scheme to sell overpriced artwork on cruise ships,

---

[2] The "fundamental fairness" analysis is theoretically and practically distinct from the discovery rule. The former applies to contractual limitations periods in admiralty and allows parties to allocate the risks of non-discovery as they see fit unless an injustice would result. The latter was created by the courts to ameliorate the harsh effects of legislatively-enacted limitations periods over which plaintiffs had no control.

[3] Because there may be other cruise line passengers who are able to satisfy the contractual notice and limitation provisions, the Court will consider defendants' other arguments on their merits.

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT      -7-

Auriemma and the Webers conducted "some independent Internet research" and/or "spoke to a friend who confirmed that he had also heard about the accusations" before concluding that they, too, "had been defrauded." SAC ¶¶ 201 and 258. Plaintiffs allege that the artwork they purchased at fine art prices was "sometimes little better than poster art and thus, are worth far less than the price paid." SAC ¶ 4. Each plaintiff has also alleged that the artwork he or she purchased was "not a good investment and [has] little (if any) likelihood of appreciating in value," contrary to the representations of the Park West auctioneer. SAC ¶¶ 196(e) and 252(g).

Plaintiffs must avoid labels, conclusions, and formulaic recitations of the elements of a cause of action in favor of factual allegations that are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 234-236 (3rd ed. 2004) ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")). They do not, however, have to plead detailed factual allegations regarding the internet searches they performed, nor are they required at the pleading stage to produce an expert in support of their damage allegations. The legal conclusion that they were defrauded is supported by the factual allegations that they paid too much for what they got, that the auctioneer lied to them, and that they performed some outside research. Whether plaintiffs will ultimately prove that they were damaged is not the issue: the fact and nature of the harm is adequately alleged for purposes of Rule 8.

**G. RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT ("RICO")**

    **1. Adequacy of Pleading**

Royal Caribbean and Celebrity argue that plaintiffs have failed to identify with the particularity required by Fed. R. Civ. P. 9(b) the individual phone calls made and/or letters transmitted by these defendants in furtherance of the fraudulent scheme described in the SAC. For the most part, defendants misconstrue the reach of Rule 9(b) in this context and ignore the

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT         -8-

allegations of the complaint.

Plaintiffs allege that Park West and the cruise line defendants used the mails and/or wires to commit or assist in the commission of the sale of overpriced artwork at sea, in violation of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.  Mail or wire fraud involves three elements:  (1) the formation of a scheme to defraud, (2) the use of the United States mails or wires in furtherance of the scheme, and (3) defendants' specific intent to deceive or defraud.  United States v. McNeil, 320 F.3d 1034, 1040 (9th Cir. 2003).  Most of the elements, such as the existence of an agreement and defendant's state of mind, may be pled with general, rather than particularized, allegations.  "The only aspects of [mail or] wire fraud that require particularized allegations are the factual circumstances of the fraud itself."  Odom v. Microsoft Corp., 486 F.3d 541, 554 (9th Cir. 2007).

Pursuant to Fed. R. Civ. P. 9(b), the circumstances of a fraud must be pled "with particularity" (Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004)), which means that the plaintiff must state the time, place, and specific content of the false representations as well as the identities of the parties thereto (Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392-93 (9th Cir. 1988) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986))).  Although plaintiffs are not able to provide the names of the individual Park West auctioneers who allegedly misrepresented the value of the artwork sold, they do identify the time, place, and specific content of the offending statements, as well as the relationship of the speaker to defendants.  Plaintiffs allege that they relied on the following statements made by Park West employees leading up to or during the on-board auctions:

- the works purchased by plaintiffs were a "good" or "great" investment and
- the works would appraise for "many times" the price paid at auction.

See, e.g., SAC ¶¶ 162(d), 184(d), and 213(d).  These allegations provide a factual basis for the

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT         -9-

averment of fraud regarding valuation and are sufficient to allow defendants to prepare an answer.

To the extent plaintiffs' fraud claim is based on misrepresentations regarding the provenance and authenticity of the purchased works, however, most of the plaintiffs have failed to provide any factual allegations in support of these asserted misrepresentations. In general, plaintiffs do not identify any statements regarding the provenance or authorship of the works they purchased beyond the bare name of the work and its author. There are no allegations from which defendants could glean what was said on these subjects, who said it, when they said it, or whether plaintiffs relied thereon. Some plaintiffs, such as Ms. Kean, cite statements made as part of the Park West's appraisal. SAC at ¶ 171(e) and Ex. D. Even if the "lithograph" representation were both false and material, Ms. Kean could not have relied thereon in purchasing the artwork because the representation was made a month after the auction. SAC ¶ 169 and Ex. D. Because most of plaintiffs' allegations of fraud center on overstatements of investment and appraisal value, the complaints do not provide Royal Caribbean and Celebrity with sufficient information to defend a fraud claim related to provenance or authenticity.[4]

For purposes of their RICO claim, plaintiffs have identified specific mail and wire communications made in furtherance of the scheme to sell overpriced artwork on defendants' cruise ships. For example, plaintiff Blackman received a certificate of authenticity from Park West and Fine Art Sales via the U.S. mail service on or about June 17, 2003, plaintiff Barton received an appraisal from Park West via the U.S. mail service in July 2006, and Royal Caribbean contacted plaintiff Kean by telephone on September 16, 2008, in response to a complaint to advise her that she would need to get her Dali appraised by a Park West-approved

---

[4] Other plaintiffs, however, have identified specific statements regarding the "originality" of their Dali "etching" or the "historic significance" of their "rare" Picasso at the time of the auction. See SAC ¶¶ 213(e), 220, 225(d) and 236. The Court notes without deciding that these allegations may satisfy Rule 9(b).

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT         -10-

appraiser.[5] Although these communications did not directly injure plaintiffs, the use of the mail or wire need not be an essential element of the scheme in order to violate the mail and wire fraud statutes. Pereira v. United States, 347 U.S. 1, 8 (1954). A violation occurs if the communication "is part of the execution of the scheme as conceived by the perpetrator at the time." Schmuck v. United States, 489 U.S. 705, 715 (1989). It is enough if the continuing success of the fraudulent venture depends upon the transmission of items or information via the mails or wires. Id. at 711-14 (the successful transfer of title registration documents through the mails was an essential step in defendant's continuing odometer-tampering scheme because it ensured that the retail dealers on whose unwitting cooperation the scheme depended would continue to work with defendant). Because the scheme alleged by plaintiffs is a long-standing venture, the fact-finder could conclude that the transmission of certificates, appraisals, and correspondence was necessary to ensure the continued viability of the enterprise. To the extent Rule 9(b) applies to plaintiffs' allegations of wire and mail fraud related to the value of the artwork, they have satisfied the heightened pleading requirements.

**2. 18 U.S.C. § 1962(c)**

A claim under § 1962(c) of RICO requires allegations that defendants conducted or participated in the conduct of an enterprise through a pattern of racketeering activity. See, e.g., Miller v. Yokohama Tire Corp., 358 F.3d 616, 620 (9th Cir. 2004). Simple involvement in the affairs of an enterprise is insufficient: to "conduct or participate in the conduct" of the enterprise's affairs, a defendant must have some part in controlling or directing the affairs.

---

[5] In the context of a motion to dismiss, the allegations of the complaint are generally dispositive. Rather than highlight the allegations of the SAC that state a viable cause of action under RICO, plaintiffs point the Court to tens, if not hundreds, of paragraphs without any discussion or assistance in understanding how these allegations establish a claim. Response at 9. Even worse, plaintiffs fail to cite the few paragraphs that actually do contain particularized allegations regarding the communications at issue (e.g., ¶ 356). When dealing with a complaint that is over 150 pages long, this lack of specificity suggests a lack of merit.

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT            -11-

Reves v. Ernst & Young, 507 U.S. 170, 177-79 (1993).  Royal Caribbean and Celebrity argue that their business relationship with Park West – including their contractual right to a percentage of the proceeds from Park West's auctions – is insufficient to establish control over the enterprise's affairs.  Goren v. New Visions Int'l, Inc., 156 F.3d 721, 728 (7th Cir. 1998) ("Indeed, simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and the management of the enterprise itself.").

Without attempting to discuss the allegations of the SAC, plaintiffs simply cite to ¶¶ 2, 5, 45-63, 80, 136-153, and 310-323 in response.  These paragraphs are conclusory (the cruise lines provided "willing and eager cooperation" as members of the enterprise (SAC ¶ 2) or jointly make "material decisions guiding the operation" of the enterprise (SAC ¶ 319)), are irrelevant (Park West responded to the July 2008 New York Times article (SAC ¶ 141)), or do not show that defendants operated and managed the enterprise's affairs (the cruise lines worked together with Park West to promote the on-board auctions and sales (SAC ¶¶ 5, 55, and 317)).  There are no allegations that Royal Caribbean or Celebrity controlled any aspect of the marketing, sales, or business of the enterprise.  The only possible exception is ¶ 58, which states that the cruise lines selected the location and timing of the auction.  This allegation of "control" is not sufficient, however.  Determining which room can be used by a vendor at a particular time is integral to the operation of a cruise ship and does not indicate that the cruise lines participated in the operation or management of the vendor's business.  Having reviewed the allegations cited by plaintiffs and the remainder of the SAC, the Court finds that the allegations of "control" are insufficient.  As alleged, the facts "do not permit the [C]ourt to infer more than the mere possibility of misconduct," and plaintiffs have failed to show that they are entitled to relief under § 1962(c).  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1950 (May 18, 2009).

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT            -12-

### 3. 18 U.S.C. § 1962(d)

Section 1962(d) makes it unlawful for any person to conspire to violate § 1962(a), (b), or (c) of RICO. Although the agreement to violate RICO need not be express, the factual allegations of the complaint, including the words, actions, and relationship between the parties, must raise an inference that an agreement exists. Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 773, 774-75 (9th Cir. 2002). Once an agreement is demonstrated, all conspirators, whether or not they individually violate RICO, are jointly and severally liable for the acts of their co-conspirators. Id. at 775. See also U.S. v. Fiander, 547 F.3d 1036, 1041 (9th Cir. 2008) (evidence that defendant knew about and agreed to facilitate a violation of RICO supports a finding of conspiracy, even if defendant did not commit the substantive offense). Plaintiffs allege that Park West and the cruise lines had a long-standing relationship, that their employees worked together to conduct almost every facet of the auctions, that they were aware of the efforts each made to attract passengers to the auction and to sell artwork, and that the cruise lines had a direct financial interest in every sale made on their ships. These allegations raise an inference of an agreement that is at least plausible. See Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1056 (9th Cir. 2008) (inference of specific intent raised by allegations of knowledge, participation in certain activities, and profit motive).

### 4. Causation

Defendants argue that plaintiffs have failed to allege an injury compensable under RICO because the alleged use of the mails and wires occurred after plaintiffs had purchased their art and could not, therefore, have caused the injuries of which plaintiffs complain. Section 1964(c) provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT         -13-

The Supreme Court has determined that common law principles of proximate causation, rather than "but for" causation, apply to RICO claims. Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 266-68 (1992). Individuals whose harm is derivative of or contingent on the direct harms suffered by others may not recover. See, e.g., Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 981 (9th Cir. 2008). There is no requirement that the individual mail and wire communications proximately cause plaintiffs' injury, however. Given that one can be convicted of mail or wire fraud even if the communications did not contain a misrepresentation (Schmuck, 489 U.S. 707-08; see also U.S. v. Shipsey, 363 F.3d 962,971-72 (9th Cir. 2004)), demanding a direct link between the use of the mails and plaintiff's injury would exclude from RICO's reach conduct that is clearly a pattern of racketeering activity. The statute itself requires only that the injury arise "by reason of a violation of section 1962," not "by reason of the predicate acts." According to plaintiffs, defendants used the mails and wires to further their long-term fraudulent enterprise. A reasonable fact-finder could conclude that the use of the mails and wires was part of the execution of the fraudulent scheme as conceived by defendants, and that the resulting violation of RICO § 1962 directly injured plaintiffs. Plaintiffs have adequately alleged causation under § 1964(c)

## H. ADMIRALTY – COMMON LAW AIDING AND ABETTING FRAUD

Plaintiffs allege that the cruise line defendants knew of Park West's scheme to defraud passengers and assisted, aided, and abetted Park West's efforts to sell worthless or overvalued artwork during the cruises. Defendants seek dismissal of this claim because (1) there are no cases recognizing a federal maritime claim for aiding and abetting fraud, (2) the claim is duplicative of the civil conspiracy claim asserted in Count VII, and (3) plaintiffs have failed to allege this claim with the particularity required by Rule 9(b).

Assuming the two-part test of Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 13 U.S. 527, 534 (1995), is satisfied, it appears that the underlying fraud claim

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT        -14-

against Park West falls within the court's admiralty jurisdiction. Defendants have not identified any characteristic or principle of an aiding and abetting claim that would preclude the application of substantive admiralty law where the underlying wrong is also subject to admiralty jurisdiction. Even if an aiding and abetting fraud claim has not yet been recognized, the "established and continuing tradition of federal common lawmaking in admiralty" suggests that dismissal is not appropriate absent some showing that the enactments of Congress or existing maritime law preclude such a claim. Am. Dredging Co. v. Miller, 510 U.S. 443, 455 (1994).

Defendants have not shown that the aiding and abetting claim is duplicative of the civil conspiracy claim. The aiding and abetting claim imposes liability on individuals who cannot be liable on the main fraud claim, but who had knowledge of the fraud and substantially assisted it. In contrast, a civil conspiracy claim requires evidence that the individual agreed to act in furtherance of a common objective. Because the elements of the claims differ and plaintiffs may be able to show substantial assistance even if they cannot establish an agreement, both claims may proceed.

The underlying fraud – Park West's misrepresentations regarding the value of the artwork sold – is adequately pled.[6] The other elements of the aiding and abetting claim can be alleged generally, rather than particularly.

**I. UNJUST ENRICHMENT**

Plaintiffs allege facts supporting all of the elements of an unjust enrichment claim under Washington law: (1) a benefit conferred, (2) knowledge of the benefit, and (3) circumstances that would make it unjust for Royal Caribbean or Celebrity to retain the

---

[6] As discussed in Section G.1., most of the plaintiffs have not adequately pled an intentional misrepresentation regarding the provenance or authenticity of the artwork they purchased.

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT          -15-

benefit. Young v. Young, 164 Wn.2d 477, 484 (2008).[7] Defendants argue that the transfer of funds through Park West, rather than directly from plaintiffs to defendants, bars this claim. Defendants are not, however, incidental beneficiaries of a third-party transaction from whom no restitution can be sought. In Farwest Steel Corp. v. Mainline Metal Works, Inc., 48 Wn. App. 719, 732 (1987), the court described the general rule as follows:

> The mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi contract, unjust enrichment, or restitution. Moreover, where a third person benefits from a contract entered into between two other persons, in the absence of some misleading act by the third person, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person. In other words, a person who has conferred a benefit upon another, by the performance of a contract with a third person, is not entitled to restitution from the other merely because of the failure of performance by the third person.

(quoting 66 Am. Jur.2d Restitution and Implied Contracts, § 16 at 960). Plaintiffs allege that Royal Caribbean and Celebrity conspired to defraud their passengers and/or assisted Park West in its scheme to sell overpriced artwork. In such circumstances, defendants are not merely innocent beneficiaries of a contract breached by Park West. Plaintiffs' claim of unjust enrichment may proceed.

**J. AGENCY AND CIVIL CONSPIRACY**

Plaintiffs allege that defendants were the agents and principals of each other and that they were acting within the scope of their agency when selling or assisting the sale of overpriced artwork at auction. Plaintiffs also allege that the relationship between defendants and their actions in furtherance of the fraudulent sales give rise to a plausible inference that there was an agreement or conspiracy to defraud plaintiffs.

---

[7] Defendants suggest that admiralty law applies to this claim, but have not analyzed whether the alleged unjust enrichment occurred on navigable waters and/or bears a significant relationship to general maritime activities. The Court has therefore applied Washington law.

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT        -16-

Defendants raise choice of law as an issue, but do not provide any analysis regarding the applicability of admiralty or a particular state's law. The Court is unaware of any rule of pleading that required plaintiffs to identify the law under which this claim is asserted. Dismissal on this ground would be inappropriate.

Defendants argue that plaintiffs' factual allegations cannot support a finding that Royal Caribbean and/or Celebrity expressly or impliedly authorized Park West to act on their behalf, especially where the Cruise Ticket Contract disclaims any agency relationship. The contractual provision is not dispositive: the fact-finder may weigh the disclaimer against other evidence that suggests the existence of an agency relationship. See Myers v. Garfield & Johnson Enters., Inc., 679 F. Supp.2d 598 (E.D. Pa. 2010); Dubret v. Holland Am. Line Westours, Inc., 25 F. Supp.2d 1151, 1153 (W.D. Wash. 1998). Although most of plaintiffs' allegations are unhelpful on this point, plaintiffs do allege that the cruise lines allowed Park West auctioneers to identify themselves as crew members when circulating among the passengers. SAC ¶ 63. If proven, this allegation could support a finding that an agency agreement existed (actual agency) or that defendants' conduct or statements caused plaintiffs to reasonably believe that an agency relationship existed (apparent agency). Plaintiffs' claim of agency may, therefore, proceed.

For purposes of the civil conspiracy claim, the underlying fraud – Park West's misrepresentations regarding the value of the artwork sold – is adequately pled under Rule 9(b).[8] The other elements of the conspiracy claim, including the existence of an agreement, can be alleged generally, and plaintiffs have alleged facts from which one could infer the existence of an agreement.

---

[8] As discussed in Section G.1., most of the plaintiffs have not adequately pled an intentional misrepresentation regarding the provenance or authenticity of the artwork they purchased.

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT              -17-

**K. DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201, *ET SEQ*.**

Plaintiffs seek a declaration that (a) Park West misrepresented the authorship, authenticity, and genuineness of the art sold to plaintiffs, and (b) defendants owed plaintiffs an affirmative duty to disclose material facts about the artwork sold on board the cruise ships. Royal Caribbean and Celebrity argue that plaintiffs' request for declaratory relief is improper because litigation has been joined and the resolution of the misrepresentation claim will obviate the need for declaratory relief. It is possible, however, that a declaration regarding the duties owed by cruise lines to their passengers could be appropriate, such that the declaratory relief would not be duplicative of the other relief sought.

To the extent plaintiffs seek injunctive relief, defendants argue that they are not in a position to provide the written assurances of authorship, authenticity, and genuineness demanded. Again, should plaintiffs succeed in establishing a duty running from the cruise lines to their passengers, some form of injunctive relief may be warranted.

For all of the foregoing reasons, the Court GRANTS Royal Caribbean's and Celebrity's motion to dismiss (Dkt. # 78). Because plaintiffs' claims are barred by the notice and suit limitation provisions contained in the Cruise Ticket Contracts, their claims against Royal Caribbean and Celebrity are hereby dismissed in their entirety.

Dated this 25th day of June, 2010.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER GRANTING CELEBRITY AND ROYAL
CARIBBEAN'S MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT        -18-