1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                          )
In re:  PARK WEST GALLERIES, INC.,        )          MDL No. 09-2076RSL
MARKETING AND SALES PRACTICES         )
LITIGATION                                          )
_____)
                                                          )          ORDER GRANTING IN PART
THIS DOCUMENT RELATES TO:              )          PARK WEST'S MOTION TO
                                                          )          DISMISS SECOND AMENDED
Blackman v. Park West Galleries, Inc.,         )          CLASS ACTION COMPLAINT
Case No. C08-1310RSL.                            )
_____)

        This matter comes before the Court on "Park West's Motion to Dismiss Plaintiffs'
Second Amended Complaint."  MDL09-2076, Dkt. # 92; C08-1310RSL, Dkt. # 164.
Defendants Park West Galleries, Inc., PWG Florida, Inc., Fine Art Sales, Inc., and Vista Fine
Art, LLC (together, "Park West" unless otherwise specified) seek dismissal of all of the claims
asserted against them.  Having reviewed the memoranda, declarations, and exhibits submitted by
the parties and having heard the argument of counsel, the Court finds as follows:

**A.  MATTERS OUTSIDE THE PLEADINGS**

        In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court's
review is generally limited to the contents of the complaint.  Campanelli v. Bockrath, 100 F.3d
1476, 1479 (9th Cir. 1996).  The Court may, however, consider documents referenced
extensively in the complaint, documents that form the basis of plaintiffs' claim, and matters of
judicial notice when determining whether the allegations of the complaint state a claim upon

which relief can be granted.  United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003).  The documents attached to plaintiffs' complaint, including the invoice and appraisals produced by Park West, fall into at least one of these categories.  The Court has, therefore, considered the documents attached to the complaint when determining whether the allegations, taken as true and construed in the light most favorable to plaintiffs, give rise to a plausible inference of actionable conduct.  See In re Syntex Corp. Sec. Litig., 95 F.3d 922, 925-26 (9th Cir. 1996); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

**B. PERSONAL JURISDICTION**

Defendants argue that the Second Amended Class Action Complaint ("SAC") should be dismissed because they are not subject to the personal jurisdiction of this Court. Because this motion is being decided on the affidavits without the benefit of an evidentiary hearing, plaintiffs' burden is to establish a *prima facie* showing of *in personam* jurisdiction over each defendant.  Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990).  In evaluating defendants' jurisdictional contacts, the Court accepts the uncontroverted and well-pled allegations in the complaint as true.  AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Alperin v. Vatican Bank, 410 F.3d 532, 539 n.1 (9th Cir. 2005).  "Conflicts between the parties over statements contained in affidavits must be resolved in plaintiff's favor." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

Jurisdiction is an issue of power.  Once challenged by defendants, the Court must determine whether it has the power to force each defendant to appear in this district.  See Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1178-79 (9th Cir. 2004).  Under both state and federal law, plaintiffs must show that defendants have minimum contacts with the forum such that haling it into court in this district will not "offend traditional notions of fair play and substantial justice."  Schwarzenegger, 374 F.3d at 801.  See also Shute v. Carnival Cruise

*Lines*, 113 Wn.2d 763, 771 (1989) (holding that Washington's long-arm statute, RCW 4.28.185, "extends jurisdiction to the limit of federal due process").

### 1. General Jurisdiction

A court may constitutionally exercise general jurisdiction over a nonresident defendant when the corporate operations within the state are so "continuous and systematic" (Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984)) that they "approximate physical presence" in the forum (Bancroft & Masters, Inc. v. August Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)).  General jurisdiction is based on defendant's general business contacts with the state:  if defendant is "found" in the state, it can be subjected to suit there even if the cause of action arose out of events occurring elsewhere.  International Shoe v. Washington, 326 U.S. 310, 318 (1945).  "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there."  Bancroft & Masters, 223 F.3d at 1086.

When the original complaint was filed in this action, defendant Park West was licensed to do business in Washington and had a designated agent for service of process.  Park West conceded at oral argument that it conducted two or three land-based auctions a year in this state until 2008.  These contacts are sufficient to establish that Park West targeted Washington citizens, transacted business, made sales, and otherwise served the state's markets during the relevant period.  Gator.Com Corp. v. L.L. Bean, Inc., 341 F.3d 1072, 1077 (9th Cir. 2003).  The Court finds that Park West should have anticipated being haled into court in Washington and that the exercise of general jurisdiction over Park West is consistent with the constitutional principles of due process.

There is no indication, however, that defendants PWG Florida, Inc., Fine Art Sales, Inc, or Vista Fine Art, LLC were physically present in the forum state at any point, that

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT          -3-

their non-forum activities generated contacts with Washington citizens or created any continuing obligations in the state, or that they had continuous and systematic ties in the jurisdiction that could give rise to an inference of purposeful or deliberate action toward Washington residents. The Court finds that it does not have general jurisdiction over these three defendants.

### 2. Specific Jurisdiction

In order to exercise specific jurisdiction over a non-resident under the federal constitution:

> (1) [t]he nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[;] (2) [t]he claim must be one which arises out of or results from the defendant's forum-related activities[; and] (3) [e]xercise of jurisdiction must be reasonable.

Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995) (citing Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977)).  Plaintiffs have not identified any acts or transactions with the forum involving defendants PWG Florida, Inc., Fine Art Sales, Inc, or Vista Fine Art, LLC.  Plaintiffs have therefore failed to make a *prima facie* showing of specific jurisdiction as to these defendants.

### 3. Nationwide Service of Process

At oral argument, plaintiffs withdrew their argument that defendants were properly summoned to defend in this district pursuant to the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1965.

### 4. Estoppel

Plaintiffs argue that defendants' personal jurisdiction argument should not be considered by the Court because (1) Park West initiated the multi-district litigation proceeding which was ultimately transferred to this district and (2) the Court ordered plaintiffs to include

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT        -4-

their class allegations in the <u>Blackman</u> case.  Neither argument is persuasive.[1]  Park West's request to litigate related cases in a single district did not constitute a waiver of any of its procedural or substantive defenses to the underlying claims.  Nor did the Court force plaintiffs to include their class allegations under this cause number.  The case management order granted plaintiffs leave to file amended complaints, noted that jurisdictional issues must be considered when determining which claims could be asserted in which action, and requested that "[a]llegations related to the class and any other issues to be decided by trial in this district should, *if possible*, be included in C08-1310RSL in order to avoid the possibility of competing national class actions and to promote the efficient resolution of the claims."  MDL09-2076 Dkt. # 31 at 3-4 (emphasis added).  Park West had already filed a motion challenging this Court's power to assert personal jurisdiction over it, so the risk of including the class allegations in only the SAC should have been apparent.

      For all of the foregoing reasons, the Court GRANTS defendants' motion to dismiss the claims asserted against PWG Florida, Inc., Fine Art Sales, Inc., and Vista Fine Art, LLC for lack of personal jurisdiction.  Park West Galleries, Inc., however, is subject to the general jurisdiction of this Court.

**C. CONTRACTUAL SUIT LIMITATION PROVISION**

    **1. Auctions At Sea**

      Plaintiffs allege that they received invoices for artwork purchased at sea that were materially identical to the one attached to their complaint as Exhibit B.  <u>See</u>, <u>e.g.</u>, SAC ¶¶ 171(g)

---

[1]  Even if the equities supported plaintiffs in this instance, they have not shown how the initiation of multi-district litigation or the Court's case management order could extend the power of this Court beyond that which is authorized by the due process clause.

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT      -5-

and 196(h).[2]  The invoices were provided (and presumably signed) by plaintiffs "at the time of purchase" in international waters.  SAC ¶ 213(h).  The invoice has two sides.  On the front is transactional information, followed by a nine-line statement wherein plaintiffs acknowledged that the purchase of the identified artwork is subject to the terms and conditions set forth in the invoice.  Directly above the signature line is the statement, "This invoice contains additional terms and conditions on the reverse side.  Those terms and conditions are important and purchaser should read them carefully."  The back of the invoice contains approximately thirty terms and conditions, one of which states, "With the sole exception of claims under section 3 of Terms of Guarantee described above, any lawsuit by purchaser asserting any claim whatever relating to artwork purchases shall not be maintainable unless filed within nine months after the invoice date shown on the purchasers' invoice."  Plaintiffs have not argued that the exception to the limitation provision applies.

a.  Choice of Law

Plaintiffs argue that the suit limitation provision is unenforceable because it is both procedurally and substantively unconscionable.  Different forums have different rules regarding the validity and enforceability of contracts, especially where unconscionability and the admissibility of parol evidence are the issues.  The parties agree that Washington's choice of law analysis applies, such that the forum with the most significant relationship to the transaction and the parties should supply the governing law.  In order to make this determination, the Court considers:

(a) the place of contracting,

(b) the place of negotiation of the contract,

_____

[2]  Although defendants assert that the invoices signed by Donna Manzone do not contain a suit limitation provision, Ms. Manzone has alleged that the invoices she received "are identical in all material respects to the invoices described in this Complaint."  SAC ¶ 240(i).

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT        -6-

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws§ 188(2).  All of these factors favor jurisdictions other than Washington:  the contracts at issue were negotiated and signed at sea, the artwork is presumably located wherever plaintiffs currently reside, and the locations of the parties and/or places of performance include Michigan and the states in which plaintiffs reside.  Washington has no ties to the agreement or the parties, and its interests do not justify the imposition of Washington law under Restatement (Second) of Conflict of Laws § 6.  The Court concludes that, in the absence of a contractual choice of law provision, federal common law as set forth in the Restatement (Second) of Contracts governs the validity and enforceability of the invoices.

b. Unconscionability

"If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contact without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result."  Restatement (Second) of Contracts § 208.  The issue is whether, when evaluated in light of its setting, purpose, and effect, the contract drives too hard a bargain such that one party is in danger of oppression and unfair surprise.  Id., comments a and b.  A contract is not unconscionable "merely because the parties to it are unequal in bargaining position:" courts should not disturb a voluntary allocation of risks simply because one party has the power to insist on its own way.  Id., comments b and d.  See also Gilmer v. Interstate/ Johnson Lane Corp., 500 U.S. 20, 33 (1991) (courts regularly uphold agreements between parties with unequal bargaining power:  such inequality, standing alone, is not sufficient to invalidate a contract).  If, however, a gross inequality of bargaining power results in contract terms that unreasonably

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT          -7-

favor the stronger party, the court may deny effect to the offending term or the contract as a whole.  Restatement (Second) of Contracts § 208, comment d.  See also Alexander v. Anthony Int'l, LP, 341 F.3d 256, 265 (3d Cir. 2003); Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003).

i. Procedural Unconscionability

Plaintiffs argue that because the invoices were presented to plaintiffs after they were "committed to purchase" the artwork, the entire contract is procedurally unconscionable. No cases are cited in support of this proposition.  Many transactions involve some sort of preliminary agreement regarding basic terms, with the details hashed out later.  Under the common law, additional terms may be proposed and accepted into the contract as long as the circumstances are "sufficient to show agreement . . . even though the moment of its making is undetermined."  Puget Sound Fin., LLC v. Unisearch, Inc., 146 Wn.2d 428, 437 (2002).

The invoices at issue are the only writing evincing the sale of artwork to plaintiffs. When the auctioneer brought the hammer down, the only known terms were the parties, the goods sold, and the price.  The nuts and bolts of the transaction, including unsurprising terms such as refund policies, taxes and fees, delivery options, integration clauses, and warranties, were presented to plaintiffs within a reasonable time of the auction.  There is no indication that plaintiffs were under any undue stress or were otherwise impaired at the time.  The invoice was legible, uncomplicated, relatively short, and written in plain English.  Although the suit limitation provision was one of thirty terms included on the second page, plaintiffs were notified via a warning immediately above the signature line that there were additional terms on the back side and that they should read them carefully.  There is no indication that, had plaintiffs taken the time to read the invoice, they would have been unable to understand its provisions. Plaintiffs had the opportunity to review the two-page document and were free to reject the additional terms, thereby reopening negotiations or walking away from the deal.  Instead,

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT          -8-

plaintiffs chose to sign the contract and accept the offered terms.  No procedural unconscionability exists.

### ii.  Substantive Unconscionability

Plaintiffs argue that the nine-month suit limitation provision is substantively unconscionable because (i) they did not receive the artwork and/or appraisals until one or two months after their cruise ended and (ii) they had no reason to suspect injury until after the nine-month period had run.  A provision limiting the time in which to bring a claim is not necessarily unfair as long as the contractual period is reasonable.  Order of United Commercial Travelers v. Wolfe, 331 U.S. 586, 608 (1947).  Even if the Court assumes that there were a two month delay between the auction and plaintiffs' receipt of their artwork/appraisals, plaintiffs had seven additional months to determine whether a cause of action existed.  Given the nature of the transaction, this period allowed for the orderly inspection and evaluation of the product and was reasonable.

### c.  Discovery Rule

Plaintiffs offer no case law in support of their argument that the Court should superimpose the discovery rule on the unambiguous limitations period contained in the invoice.  Even if the discovery rule applies, it would save only plaintiff Blackman's and plaintiff Kean's claims.  All of the other named plaintiffs acknowledge that the alleged fraud was disclosed in a July 16, 2008, New York Times article, and yet they did not file suit until more than nine months later.

### d.  Equitable Tolling

The discovery rule delays the start of the limitations period until plaintiff knows or should have known of his injury.  Equitable tolling, on the other hand, serves to extend the limitations period once the injury is apparent if plaintiff, acting with due diligence, "cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so,

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT                    -9-

wrongdoing by the defendant." <u>Garcia v. Brockway</u>, 526 F.3d 456, 465 (9th Cir. 2008) (<u>quoting</u> <u>Cada v. Baxter Healthcare Corp.</u>, 920 F.2d 446, 451 (7th Cir. 1990) (J. Posner)). Plaintiffs have neither asserted facts that trigger equitable tolling nor provided authority for its imposition in a contractual setting.

e. Equitable Estoppel

The Court will assume for purposes of this motion that a defendant can be equitably estopped from raising a contractual limitation provision as a defense if it takes actions or makes representations that prevent plaintiff from filing suit within the limitations period. The primary focus of the equitable estoppel analysis is defendant's conduct/misrepresentations and whether plaintiff reasonably relied on them to his detriment. <u>See</u> <u>Huseman v. Icicle Seafoods,</u> <u>Inc.</u>, 471 F.3d 1116, 1121 (9th Cir. 2006).

Plaintiffs argue that defendants took steps to conceal the alleged scheme to sell overpriced artwork by failing to reveal the scheme and/or the true value of the artwork sold. SAC ¶¶ 153, 272-277. Plaintiffs have not, however, alleged that they sought information from defendants and were rebuffed or that defendants took extraordinary steps to make information unavailable. In essence, plaintiffs argue that the same conduct that gave rise to their causes of action (selling overpriced artwork on cruise ships without revealing actual valuation) also supports equitable estoppel. A plaintiff must, however, point to "some active conduct by the defendant above and beyond the wrongdoing upon which the plaintiff's claim is based" in order to trigger equitable estoppel. <u>Lukovsky v. City and County of San Francisco</u>, 535 F.3d 1044, 1052 (9th Cir. 2008), <u>cert. denied</u>, __ U.S. __, 129 S. Ct. 1997 (2009). For example, if defendants had stated that they would not assert the statute of limitation as a defense or had promised to reimburse plaintiffs' losses only to renege the day after the limitations period expired, they might be equitably estopped.

In the circumstances presented here, plaintiffs would have the Court find

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT          -10-

defendants guilty of fraudulent concealment merely because they did not tell plaintiffs that they had sold them overpriced art.  Such an argument merges the substantive wrong with the estoppel doctrine, effectively eliminating the limitations period.  Id. (quoting Cada, 920 F.2d at 451).  In the absence of a misrepresentation or conduct by defendants aimed at concealing the underlying tort alleged in the SAC or otherwise preventing plaintiffs from timely asserting their rights, equitable estoppel is not applicable.

  f.  Voidable Contract

   Plaintiffs argue that, because they agreed to purchase artwork (and signed the related invoices) in reliance on Park West's fraudulent representations, the invoices are invalid. Dkt. # 125 at 31.[3]  Pursuant to the Restatement (Second) of Contracts § 164, "[i]f a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."  A contracting party is generally not permitted to rely on another's statement of opinion regarding quality or value.  Restatement (Second) of Contracts § 168, comments b and c, and § 169.  It must be assumed that a seller will speak favorably of what he has to sell. "When he praises it in general terms, commonly known as 'puffing' or 'sales talk,' without specific content or reference to facts, buyers are expected to understand that they are not entitled to rely."  Restatement (Second) of Contracts § 169, comment b.  This rule gives way, however, if the buyer "reasonably believes that, as compared with himself, the person whose opinion is asserted has special skill, judgment or objectivity with respect to the subject matter." Restatement (Second) of Contracts § 169(b).

   Plaintiffs allege that they are not sophisticated purchasers of art and that Park West, by contrast, is a large and knowledgeable art dealer.  Plaintiffs allege that they relied on

---

  [3]  Although this argument was asserted as a defense to the integration clause found in the invoice (Opposition at 31), it applies equally to the contractual suit limitation provision.

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT  -11-

the following statements made by Park West employees:

- the works purchased by plaintiffs were a "good" or "great" investment and
- the works would appraise for "many times" the price paid at auction.

See, e.g., SAC ¶¶ 162(d), 184(d), and 213(d).[4]  Even if these representations were statements of opinion that plaintiffs should reasonably have discounted as "puffery," plaintiffs would still be entitled to assume that the statements were "not so far removed from the truth as to be incompatible with the facts known to" Park West.  Restatement (Second) of Contracts § 168, comment d.  Especially in light of plaintiffs' reasonable belief that Park West had special skill and judgment with respect to the value of the artwork, they could reasonably infer "that there are facts that justify [Park West's] opinion, or at least that there are not facts that are incompatible with it."  Id.[5]

Plaintiffs allege that Park West grossly misrepresented the value of the artwork it sold, playing on plaintiffs' relative lack of information and sophistication to convince them that the pieces were good investments and likely to appraise for many times the sale price.  A contract induced by a fraudulent or material misrepresentation is voidable by plaintiffs.  Restatement (Second) of Contracts § 164(1).  Plaintiffs have not, however, sought to invalidate the sales contracts.  Because the contracts remain in effect, plaintiffs' claims arising from

---

[4]  Plaintiffs also allege that Park West misrepresented the provenance of the artwork they purchased.  SAC ¶ 397.

[5]  See Restatement (Second) of Contracts § 169, illustration 2 ("A, the proprietor of a dance studio, seeking to induce B, a 60-year-old widow with no background in dancing, to make a contract for dance lessons, tells B that she has 'dance potential' and would develop into a 'beautiful dancer.'  A knows that B has little aptitude as a dancer.  B is induced by A's statement of opinion to make the proposed contract.  B's reliance on A's statement of opinion is justified, and the contract is voidable by B.").

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT          -12-

transactions at sea are untimely and must be dismissed.[6]

### 2.  Auctions On Land

Plaintiffs Davidson, Barton, Intha, and Manzone purchased artwork from Park West at land auctions in Nevada, North Carolina, Florida, and/or Michigan.  The parties have not fully briefed the choice of law issues related to these transactions or the impact of the various state laws on the validity of the contractual suit limitation provisions.  The Court will not *sua sponte* evaluate these potentially dispositive issues and will assume, for purposes of this motion, that plaintiffs' claims arising out of Park West's land-based auctions may proceed.

### D.  RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT ("RICO")

### 1.  Adequacy of Pleading

Plaintiffs allege that defendants have violated 18 U.S.C. § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Park West argues that plaintiffs have failed to identify with the particularity required by Fed. R. Civ. P. 9(b) the existence of an enterprise and a pattern of racketeering activity.  For the most part, defendants misconstrue the reach of Rule 9(b) in this context and ignore the allegations of the complaint.

### a.  Allegations of "Enterprise"

The statutory definition of "enterprise" is "not very demanding."  Odom v. Microsoft Corp., 486 F.3d 541, 548 (9th Cir. 2007).  An enterprise "is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course

---

[6] Because it seems likely that plaintiffs will move to amend their complaint to seek invalidation of the contract, the Court will consider defendants' other arguments on their merits.

of conduct." United States v. Turkette, 452 U.S. 576, 583 (1981). The enterprise need not have any particular organizational structure separate from its members or beyond that which is necessary to carry out its chosen course of conduct: it simply must function as an on-going, continuing unit. Odom, 486 F.3d at 551-52. This element of a RICO claim does not sound in fraud and need not be pled with particularity. Plaintiffs allege that Park West and the cruise lines participated in an on-going association designed to funnel cruise line passengers to Park West's auctions for the purpose of selling worthless or overvalued artwork and thereby increasing the profits of the association's members. When asked to review the sufficiency of similar allegations in Odom, the Ninth Circuit applied the pleading standards of Fed. R. Civ. P. 8 and found that the allegations were "more than adequate." Odom, 486 F.3d at 552. Even when evaluated through the lens of Twombly, the allegations related to an "enterprise" are sufficient.

b. Allegations of "Racketeering Activity"

The racketeering activity alleged in the complaint consists of mail and wire fraud in violation of 18 U.S.C. § 1341 and § 1343. Mail or wire fraud involves three elements: (1) the formation of a scheme to defraud, (2) the use of the United States mails or wires in furtherance of the scheme, and (3) defendants' specific intent to deceive or defraud. United States v. McNeil, 320 F.3d 1034, 1040 (9th Cir. 2003). Most of the elements, such as the existence of an agreement and defendant's state of mind, may be pled with general, rather than particularized, allegations. "The only aspects of [mail or] wire fraud that require particularized allegations are the factual circumstances of the fraud itself." Odom, 486 F.3d at 554. Although plaintiffs are not able to provide the names of the individual Park West auctioneers who allegedly misrepresented the value of the artwork sold, they do identify the time, place, and specific content of the offending statements, as well as the relationship of the speaker(s) to defendants.[7]

---

[7] As discussed below in Section G.2., plaintiffs have not adequately pled an intentional misrepresentation regarding the provenance or authenticity of the artwork they purchased.

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT          -14-

These allegations provide a factual basis for the averment of fraud and are sufficient to allow Park West to prepare an answer. To the extent Rule 9(b) applies to plaintiffs' allegations of wire and mail fraud related to the value of the artwork, they have satisfied the heightened pleading requirements.

          c.  Allegations of Causation and Reliance

          Defendants also challenge the adequacy of plaintiffs' allegations regarding causation and reliance. Plaintiffs allege that they would not have bid on or purchased artwork from Park West had it not misrepresented its investment and appraisal value. See, e.g., SAC ¶ 165. Even if one assumes that these straightforward allegations regarding plaintiffs' state of mind is somehow insufficient, the underlying factual allegations regarding the parties' relative experience and Park West's statements regarding value raise an inference of reliance that supports the causation allegations.

     **2.  18 U.S.C. § 1962(d)**

          Section 1962(d) makes it unlawful for any person to conspire to violate § 1962(a), (b), or (c) of RICO. Although the agreement to violate RICO need not be express, the factual allegations of the complaint, including the words, actions, and relationship between the parties, must raise an inference that an agreement exists. Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 773, 774-75 (9th Cir. 2002). Once an agreement is demonstrated, all conspirators, whether or not they individually violated RICO, are jointly and severally liable for the acts of their co-conspirators. Id. at 775. See also U.S. v. Fiander, 547 F.3d 1036, 1041 (9th Cir. 2008) (evidence that defendant knew about and agreed to facilitate a violation of RICO supports a finding of conspiracy, even if defendant did not commit the substantive offense). Plaintiffs allege that Park West and the cruise lines had a long-standing relationship, that their employees worked together to conduct almost every facet of the auctions, that they were aware of the efforts each made to attract passengers to the auction and to sell artwork, and that the cruise lines

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT       -15-

had a direct financial interest in every sale made on their ships.  These allegations raise a plausible inference of an agreement.  See Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1056 (9th Cir. 2008) (inference of specific intent raised by allegations of knowledge, participation in certain activities, and profit motive).

## E. CONSUMER PROTECTION ACT CLAIMS

### 1. Standing

None of the named plaintiffs has even an arguable basis on which to assert causes of action under the consumer protection laws of Alaska, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Hawaii, Idaho, Illinois, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Vermont, Virginia, Washington, West Virginia, or Wisconsin. Plaintiffs may not, therefore, assert these claims on behalf of absent class members.  Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d 1018, 1022-23 (9th Cir. 2003).

### 2. Adequacy of Pleading Under Michigan and Nevada Statutes

Plaintiffs' claims under the Michigan (Manzone) and Nevada (Davidson and Intha) consumer protection statutes sound in fraud and therefore must satisfy the pleading requirements of Fed. R. Civ. P. 9(b).  The circumstances of the fraud must be pled "with particularity" (Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004)), which means that the plaintiff must state the time, place, and specific content of the false representations as well as the identities of the parties thereto (Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392-93 (9th Cir. 1988) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986))).  Although plaintiffs are not able to provide the names of the individual Park West auctioneers who allegedly misrepresented the value of the artwork sold, they do identify the time, place, and specific content of the offending statements, as well as the

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT          -16-

relationship of the speaker to defendants.  As discussed above in Section C.1.f., plaintiffs relied

on statements regarding the works' investment potential and appraisal value.

See, e.g., SAC ¶¶ 162(d), 184(d), and 213(d).  These allegations provide a factual basis for the

averment of fraud regarding valuation and are sufficient to allow defendants to prepare an

answer.

To the extent plaintiffs' consumer protection claim is based on misrepresentations

regarding the provenance and authenticity of the works purchased on land, however, plaintiffs

Manzone, Davidson, and Intha have failed to provide any factual allegations in support of these

asserted misrepresentations.  Plaintiffs do not identify any statements regarding the provenance

or authorship of the works they purchased beyond the bare name of the work and its author.

There are no allegations from which defendants could glean what was said on these subjects,

who said it, when they said it, or whether plaintiffs relied thereon.  Because Manzone's,

Davidson's, and Intha's allegations of fraud center on overstatements of investment and

appraisal value, the complaint does not provide Park West with sufficient information to defend

a fraud claim related to provenance or authenticity.

### 3.  Reasonable Reliance Under Florida Statute

Defendants argue that the written disclaimers of liability plaintiff Barton received

negate the reasonableness of her reliance on the auctioneer's statements regarding investment

and appraisal value.  Under Florida law, parol evidence of contemporaneous oral statements that

induce the execution of the written contract is admissible if the evidence is "clear, precise, and

indubitable."  Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1309-10

(11th Cir. 1998).  In the context of this motion to dismiss, the Court is not in a position to

determine the credibility or weight to be given Ms. Barton's allegations regarding the statements

of the auctioneers.

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT          -17-

**F. ADMIRALTY JURISDICTION AND STATE STATUTES**

Defendants argue that the Michigan Fine Art Sales Act, Mich. Comp. Laws § 442.321 *et seq*., and the Michigan Art Multiple Sales Act, Mich. Comp. Laws § 442.351 *et seq*., do not apply to sales conducted in international waters.[8]  Plaintiffs make no attempt to address the Court's earlier determination that their claims against Park West arising out of auctions at sea satisfy both the location and connection tests set forth in Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 531-34 (1995), and are therefore cognizable in admiralty.  Because the damage provisions of the Michigan Art Multiple Sales Act allow for the recovery of attorney's fees (Mich. Comp. Laws § 442.365(b)), it conflicts with established admiralty law and is preempted.  See F.W.F., Inc. v. Detroit Diesel Corp., 494 F. Supp.2d 1342, 1352-53 (S.D. Fla. 2007); DeRossi v. Nat'l Loss Mgmt., 328 F. Supp.2d 283, 288-89 (D. Conn. 2004).  Defendants have not, however, shown that the Michigan Fine Art Sales Act conflicts with the law of admiralty.

Park West further argues that plaintiffs' allegations related to the Michigan Fine Art Sales Act are so conclusory and vague that it is unable to prepare a response to the claim. The statute establishes circumstances in which a warranty of the authenticity of authorship arises.  The only plaintiff who challenges the veracity of statements regarding authorship of a work she purchased from Park West is Vicki Barton.  SAC ¶¶ 213(e) and 220.  None of the other named plaintiffs has contested the authenticity of the works they purchased:  their claims under the Michigan Fine Sales Act appear to be based on plaintiffs' general allegations regarding Park West's business practices and conduct toward other customers.  Defendants are justifiably confused about the nature of most of plaintiffs' claims under the statute.

Count III fails as a matter of law as to all plaintiffs, with the exception of Ms.

---

[8]  The claims asserted in Count III of the SAC are explicitly based on the sales of "artwork at shipboard art auctions."  SAC ¶ 386.  See also SAC ¶ 392.

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT          -18-

Barton's claim under the Michigan Fine Art Sales Act.

## G. ADMIRALTY – COMMON LAW FRAUD

Defendants argue that plaintiffs' fraud claim fails because:  (1) it is barred by the merger clause in the invoices plaintiffs signed; (2) it is not alleged with the particularity required by Rule 9(b); and (3) plaintiffs have alleged only "puffery," which is not actionable.

### 1.  Contractual Merger Clause

The front of the invoices contains the following term in capital letters:  "No verbal agreements or representations shall be of any force or effect unless set forth in writing in this invoice."  A similar term is included on the back of the invoices.  For the reasons discussed above in Section C.1.f., the invoices, including the merger provision, are voidable by the recipients under federal common and maritime law.[9]  Plaintiffs have not, however, sought to invalidate the sales contracts.  Because the merger provisions remain in effect, plaintiffs cannot establish that they reasonably relied on prior representations that were expressly voided by the very contract plaintiffs signed.[10]

### 2.  Adequacy of Pleading under Rule 9(b)

For the reasons stated in Sections C.1.f. and E.2., plaintiffs' fraud claim related to valuation satisfies the heightened pleading standard of Rule 9(b).  Count IV of the complaint also mentions misrepresentations regarding the provenance and authenticity of the purchased works.  Most of the plaintiffs have failed to provide any factual allegations in support of these

[9]  To the extent plaintiffs' fraud claim is based on representations made on land, the parties have not identified or analyzed the governing state law.

[10]  Plaintiffs argue that, because Park West breached a provision of the invoices first, it cannot enforce the remainder of the contract.  Plaintiffs have not alleged a breach of contract claim against Park West, have not shown that the alleged defects in the appraisals rendered further performance by plaintiffs ineffective or impossible (Tocco v. Tocco, 409 F. Supp.2d 816, 829 (E.D. Mich. 2009)), and have not identified a governing rule of federal common law.

asserted misrepresentations.  In general, plaintiffs do not identify any statements regarding the provenance or authorship of the works they purchased beyond the bare name of the work and its author.  There are no allegations from which defendants could glean what was said on these subjects, who said it, when they said it, or whether plaintiffs relied thereon.  Some plaintiffs, such as Ms. Kean, cite statements made as part of the Park West's appraisal.  SAC at ¶ 171(e) and Ex. D.  Even if the "lithograph" representation were both false and material, Ms. Kean could not have relied thereon in purchasing the artwork because the representation was made a month after the auction.  SAC ¶ 169 and Ex. D.  Because most of plaintiffs' allegations of fraud center on overstatements of investment and appraisal value, the complaint does not provide Park West with sufficient information to defend a fraud claim related to provenance or authenticity.[11]

### 3.  Non-Actionable "Puffery"

As discussed above in Section C.1.f., plaintiffs' reliance on Park West's statements regarding investment and appraisal values may be justified.  Plaintiffs could reasonably believe that, as compared with themselves, Park West has special skill and judgment with respect to the subject matter of the statements.  Restatement (Second) of Contracts § 169(b).  At the very least, plaintiffs had a right to expect that Park West's statements of value were "not so far removed from the truth as to be incompatible with the facts known to" Park West.  Restatement (Second) of Contracts § 168, comment d.[12]

---

[11] Plaintiffs Barton and Intha have identified specific oral representations regarding the "originality" of their Dali "etching" or the "historic significance" of their "rare" Picasso at the time of the auction.  See SAC ¶¶ 213(e), 220, 225(d) and 236.  The Court notes without deciding that these allegations may satisfy Rule 9(b).

[12]  Defendants' argument that their statements were merely predictions of future events is not persuasive.  Defendants' statements are definite and provide information regarding the investment or appraisal value of the artwork at the time of the statement.  In addition, the statements imply a number of subsidiary facts, such as that Park West had a particular state of mind concerning the subject (i.e., it believed what its employees said), that Park West was certain enough to make a definitive statement

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT            -20-

**H. CIVIL CONSPIRACY**

Plaintiffs allege that the relationship between defendants and their actions in furtherance of the fraudulent sales give rise to a plausible inference that there was an agreement or conspiracy to defraud plaintiffs.  For purposes of the civil conspiracy claim, the underlying fraud – Park West's misrepresentations regarding the investment and appraisal value of the artwork sold – is adequately plead under Rule 9(b).  The other elements of the conspiracy claim, including the existence of an agreement, can be alleged generally, and plaintiffs have alleged facts from which one could infer the existence of an agreement.[13]

**I. STATUTES OF LIMITATION**

Defendants argue that certain purchases made by plaintiffs Blackman, Manzone, Auriemma, Weber, and Davidson are no longer actionable because the applicable statutes of limitation have expired.  For purposes of this analysis, the allegations asserted by each of these plaintiffs are similar.  Each plaintiff purchased artwork from Park West before January 15, 2006. Each plaintiff had the work(s) appraised by Park West at or around the time of purchase and was assured that the art was worth more than they had paid for it.  All plaintiffs continued to believe that the appraisal was valid until 2008 when the New York times published an article entitled "Art Auctions on Cruise Ships Lead to Anger Accusations and Lawsuits."  After the article was published, plaintiffs conducted their own investigation and promptly filed suit.  Based on these facts, plaintiffs argue that their claims, most of which had to be asserted within four years of accrual, are timely under the discovery rule and/or the doctrine of equitable estoppel.

---

regarding present value, and that Park West had information that justified its belief or at least did not have information that was incompatible with its statement.

[13]  Defendants have apparently abandoned their argument that plaintiffs' conspiracy claim should be dismissed because South Carolina law requires allegations of "special damages."

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT          -21-

### 1.  Discovery Rule

The applicable statutes of limitation began to run when plaintiffs knew or should have known of the injuries that underlie their causes of action.  Pincay v. Andrews, 238 F.3d 1106, 1108 (9th Cir. 2001).  Plaintiffs affirmatively plead that they did not suspect that they had paid too much for their artwork until mid-2008.  They allege facts, such as the contemporaneous Park West appraisals, which suggest that they took reasonable steps to safeguard their interests, and they identify a specific event which triggered suspicion and further investigation.  Based on the facts asserted, the Court cannot conclude as a matter of law that plaintiffs were negligent in failing to discover sooner that defendants had sold them, or conspired to sell them, artwork at inflated prices.

### 2.  Equitable Estoppel

For the reasons set forth in Section C.1.e., equitable estoppel is not applicable in the circumstances presented here.

### J.  UNJUST ENRICHMENT

Generally, "[a] party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract."  Chandler v. Wash. Toll Bridge Auth., 17 Wn.2d 591, 604 (1943).  See also Bouverat v. Park West Gallery, Inc., C08-21331-Jordan (S.D. Fla. Dec. 22, 2008).  Because plaintiffs have not sought to void the invoices, they govern the relationship between the parties.  Plaintiffs' equitable claim of unjust enrichment against Park West therefore fails as a matter of law.[14]

For all of the foregoing reasons, Park West's motion to dismiss the Second Amended Class Action Complaint (MDL09-2076, Dkt. # 92; C08-1310RSL, Dkt. # 164) is

---

[14]  To the extent plaintiffs' unjust enrichment claim is based on purchases made on land, the parties have not identified or analyzed the governing state law.

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT          -22-

GRANTED in part and DENIED in part.  The claims asserted against PWG Florida, Inc., Fine Art Sales, Inc., and Vista Fine Art, LLC, are dismissed in their entirety for lack of personal jurisdiction.  Because plaintiffs have not sought to invalidate the invoices that govern the parties' relationship, plaintiffs' claims related to purchases of art at sea are barred under the contractual limitations provision, their alleged reliance on representations made prior to contracting was unjustified, and their equitable unjust enrichment claim fails.[15]  Plaintiffs' claims under the consumer protection acts of Alaska, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Hawaii, Idaho, Illinois, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Vermont, Virginia, Washington, West Virginia, or Wisconsin are dismissed for lack of standing.  All of plaintiffs' claims under the Michigan Fine Art Sales Act and the Michigan Art Multiple Sales Act are dismissed with the exception of plaintiff Barton's claim under the Michigan Fine Art Sales Act.


Dated this 25th day of June, 2010.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge


---

[15]  Defendants have failed to show that the invoices related to sales occurring on land are valid and enforceable under the applicable state laws.  At least some of plaintiffs' claims regarding those sales may therefore proceed.

ORDER GRANTING IN PART PARK WEST'S
MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT          -23-